## MATTER OF LASIKE

### In Deportation Proceedings

A-21316510
A-21316512
A-21317207

*Decided by Board July 30, 1980*

(1) To be eligible for permanent residence as a special immigrant minister under section 101(a)(27)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. 1101(a)(27)(C)(i), the alien must establish that he is an immigrant who continuously for at least 2 years immediately preceding the time of his application for admission to the United States was a minister and who seeks to enter the United States solely for the purpose of carrying on the vocation of minister of a religious denomination, and whose services are needed by such religious denomination having a bona fide organization in the United States.

(2) A "renewed" application for adjustment of status in deportation proceedings will be treated as a new application if the alien was statutorily ineligible for adjustment of status based on the circumstances as they existed when the application was originally denied by the District Director and if the present application is based on circumstances which have occurred since the denial. *Matter of Huang,* Interim Decision 2616 (BIA 1978), *reaffirmed.*

(3) Where the documents submitted in support of an application for adjustment of status established that the respondent entered the United States with a preconceived intent to remain, his application can be denied in the exercise of discretion.

CHARGE:

Order:  Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrants—remained longer than permitted

By:  Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated July 13, 1978, an immigration judge found the respondents deportable as charged, denied the respondents' applications for adjustment of status pursuant to section 245 of the Immigration and Nationality Act, 8 U.S.C. 1255, but granted them the privilege of voluntary departure in lieu of deportation. The respondents have appealed. The appeals will be dismissed.[1]

---

[1] The applications of the two children are based on the application for adjustment of

The principal respondent is a 48-year-old married male alien, a native and citizen of Tonga. He was admitted to the United States on July 11, 1974, as a nonimmigrant visitor authorized to remain until October 10, 1974. On October 8, 1974, the respondent filed an application To Extend Time of Temporary Stay, Form I-539. On the application, the respondent stated that the reason for the requested extension was "[t]o continue in visitor status, to mingle with friends and church members from Tonga living here [in the United States]." He further indicated that he had not been employed or engaged in business in the United States.

On May 15, 1975, the respondent submitted his application for adjustment of status to the District Director. To be eligible for permanent resident status as a special immigrant, as a minister under section 101(a)(27)(C)(i) of the Act, 8 U.S.C. 1101(a)(27)(C)(i), the alien must establish that he is an immigrant who continuously for at least two years immediately preceding the time of his application for admission to the United States has been, and who seeks to enter the United States solely for the purpose of carrying on the vocation of minister of a religious denomination, and whose services are needed by such religious denomination having a bona fide organization in the United States.

On September 18, 1976, the application was denied. The District Director denied the respondent's application for adjustment of status on the ground that he did not meet the 2-year requirement and that when he entered the United States as a visitor he had a preconceived intent to remain permanently. The respondent was granted voluntary departure on or before October 1, 1976, without the issuance of an Order to Show Cause. He failed to depart. An Order to Show Cause was issued November 15, 1977. At the deportation proceedings the respondent renewed his application for adjustment of status. In support of his application, the respondent submitted the following documents:

1) A letter dated March 2, 1974, from Tonga which recommended the respondent "for ministry and practical observations of Gospel ministries *overseas.*" (Emphasis added.)

2) A letter dated April 18, 1975, which stated that the respondent had been a member of the Assemblies of Tonga since 1970, that he became a lay preacher in 1971, that he served as a deacon and that in 1973 he served as a pastor of the church he built.

3) A Christian Worker's Certificate which authorized him to exhort and conduct religious services.

4) A license to preach issued October 30, 1975, issued at Santa Cruz, California.

5) A letter dated November 13, 1974, from the Tonga tradition department stating the income of the respondent.

6) A letter dated October 30, 1974, signed by Robert Pirtle, Assistant District Super-

status filed by their father, the principal respondent. Therefore, this appeal will concern itself with the qualification of the father for the benefits sought.

intendent, written to Roy Lange, stating that the salary of the respondent is $700 a month.

7) A letter dated May 8, 1975, signed by Robert Pirtle stating that the respondent was appointed pastor of the church in Redwood City on October 7, 1974.

8) A letter dated November 17, 1975, signed by Robert Pirtle which states that the respondent and his wife have pastored the Tongan Assemblies of God church, first in Belmont and then in Redwood City *since their arrival.* (Emphasis added.)

The immigration judge found that the District Director correctly denied the respondent's application for adjustment of status filed on May 15, 1975. None of the evidence presented to the District Director established that the respondent had been carrying on the vocation of minister of a religious denomination for 2 years prior to the denial of his application by the District Director. Based on this, the immigration judge found that since the respondent was statutorily ineligible for adjustment of status when he originally filed the application with the District Director that he would treat the renewed application in the deportation proceedings as a new application. The immigration judge explained his reason for doing this as follows:

> [E]ver since immigration judge's [sic] were given the authority in 1962 to pass on applications for permanent resident status, where an alien's application was denied by a District Director and the case came before me, his decision has, in effect, been reviewed by me. If on the same evidence I thought that the application had been erroneously denied by the District Director, I granted the application, nunc pro tunc, the same as a United States District Court would have done if prior to 1962 it had come before the Court as a consequence of a declaratory judgment action. However, if the respondent became eligible for relief only after the District Director denied his application, I treated the application as a new application. It seemed to me that this was a fair way to handle such applications because an alien should not be penalized by reason of any errors of the District Director. On the other hand he should not gain an advantage merely because he had filed an application for relief for which he was not then eligible.

Based on the immigration judge's determination that the renewed application filed January 10, 1978, would be treated as a new application, he found the respondent statutorily ineligible for adjustment of status because he continued in unauthorized employment after January 1, 1977[2], and prior to the filing of the new application for adjustment of status.

On appeal, the respondent, through counsel, contends that the immigration judge erred in finding that he was not a minister of a religious denomination prior to his submission of the application for adjustment of status and that the immigration judge erred in finding him ineligible for adjustment of status under section 245(c) of the Act.

Based on the evidence above, we find that the respondent's applica-

---

[2] The respondent made no showing that his employment as a minister was authorized by the Service.

tion for adjustment of status should be denied because he was statutorily ineligible for adjustment of status at the time he originally filed the application in that he did not establish at least 2 years of experience as a minister prior to filing the application, and as a matter of discretion based on a preconceived intent to remain permanently in the United States.

We concur in the decision of the immigration judge that the respondent was statutorily ineligible for adjustment of status as a special immigrant as a minister because he was not for the 2 years preceding the time of his original application for admission as a minister of a religious denomination. The evidence presented indicates that the respondent was a lay preacher who worked with the ministry of the youth prior to his entrance in the United States on July 11, 1974. On July 25, 1974, 14 days after his arrival, he applied for "ministerial recognition" and on December 17, 1974, he was granted a "Christian Worker's Certificate" which entitled him to exhort and conduct religious services. On October 30, 1975, the respondent was issued a "license to preach." In December of 1977, the respondent became an ordained minister of the church. Further, we concur in the immigration judge's analysis that since the District Director correctly denied the respondent's adjustment of status application filed on May 15, 1975, that the renewed application in the deportation proceedings held on January 10, 1978, should be treated as a new application. We further agree that this analysis is consistent with our decision in *Matter of Huang, supra*, we stated that an application for adjustment of status which had been denied by the District Director and later renewed in the deportation proceedings based on the same facts would be reviewed according to the circumstances as they existed when the application was originally filed with the District Director. In the present case, it is the qualifications of the respondent as a minister which are the bases of the immigration judge's affirmance of the District Director's denial of his adjustment of status application.[3]

Even if the respondent was statutorily eligible for adjustment of status under section 245 of the Act, the application would be denied as a matter of discretion. The granting of adjustment of status is a form of discretionary relief, which is not an automatic act conditioned solely upon a showing of statutory eligibility. It is a privilege and a matter of grace, accorded to a person where that person has established that he is worthy of it. *Matter of Turcotte*, 12 I&N Dec. 206 (BIA 1967). It is the

[3] We do not find it necessary to reach the question of whether the applicant is presently barred by section 245(c) of the Act for adjustment of status, since adjustment of status will still be denied as a matter of discretion based on the respondent's preconceived intent to remain permanently in the United States even though it now appears he has the requisite 2 years experience.

respondent's burden to establish that he is not only eligible for any requested benefit or privilege, but also that it should be granted in the exercise of discretion.

In a letter dated March 2, 1974, which was prior to the respondent's entry into the United States, the writer recommends the respondent "for ministry and practical observations of Gospel ministries overseas." This letter in conjunction with the filing by the applicant of an application for "ministerial recognition" only 11 days after his arrival indicates a preconceived intent on the part of the respondent to remain permanently in the United States. Further, in a letter from the Assistant District Superintendent for the Assemblies of God, he states that the respondent was appointed pastor of the Tongan Assembly of God Church in Redwood City on October 7, 1974. On October 8, 1974, the respondent in his "Application to Extend Time of Temporary Stay" makes no mention of the fact that he was employed as a pastor at $700 a month nor did he mention that he had pastored in Belmont since his arrival in the United States. The respondent stated that his reasons for requesting an extension were "to continue in visitor status, to mingle with friends and church members from Tonga living here."

Based on the above, we find that the respondent's application for adjustment of status should be denied due to statutory ineligibility and as a matter of discretion based on his preconceived intent to remain in the United States. Accordingly, the appeal of the respondent will be dismissed.

ORDER: The appeal is dismissed.

FURTHER ORDER: Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within 30 days from the date of this order; and in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.