06-3974-ag
Brito v. Mukasey

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

_____

August Term, 2006

(Argued: June 21, 2007)                                    Decided: March 26, 2008)

Docket No. 06-3974-ag

_____

RAMON BRITO,

*Petitioner,*

-*v.*-

MICHAEL B. MUKASEY, Attorney General,[*]

*Respondent.*

_____

BEFORE:          MINER, SACK, and HALL, *Circuit Judges.*

_____

Petition for review of a final decision of the Board of Immigration Appeals. Petitioner

failed to exhaust the issue of whether he was properly designated an arriving alien and thus we

do not reach it. Because Petitioner's current application for adjustment of status is new and

separate from the application he previously filed, the Immigration Judge lacks jurisdiction to

adjudicate it. Petitioner lacks standing to argue that regulations withholding from immigration

judges jurisdiction to adjudicate adjustment of status applications are ultra vires. Accordingly,

the petition is denied.

_____

[*] Attorney General Michael B. Mukasey is substituted for former Attorney General
Alberto Gonzales pursuant to Fed. R. App. P. 43(c)(2).

1

LILA SLJIVAR, Wilens & Baker, P.C., New York, NY, *for Petitioner*.

JESSE M. BLESS, Office of Immigration Litigation (Peter D. Keisler, Assistant Attorney General, Civil Division, David V. Bernal, Assistant Director, *on the brief*), U.S. Department of Justice, Washington, D.C., *for Respondent*.

HALL, *Circuit Judge*:

Petitioner Ramon Brito asks this Court to review the July 31, 2006 decision of the Board of Immigration Appeals ("BIA") affirming in part and modifying in part the April 27, 2005 decision of Immigration Judge ("IJ") Noel Brennan denying Brito's application for adjustment of status. *In re Ramon Brito*, No. A75 800 038 (B.I.A. July 31, 2006), *aff'g* No. A75 800 038 (Immig. Ct. N.Y. City Apr. 27, 2005). Brito argues: (1) because he returned to the United States pursuant to a grant of advance parole, he erroneously was designated an "arriving alien"; (2) the IJ has jurisdiction over his application for adjustment of status because it is a renewed version of the application he filed prior to his departure from the United States—upon which his grant of advance parole was based; and (3) the regulations withholding from the IJ jurisdiction to adjudicate his application for adjustment of status are ultra vires. We conclude: (1) Brito failed to exhaust before the agency the issue of his designation as an arriving alien and thus we do not reach it; (2) because Brito's present application for adjustment of status is new and separate from his previously filed application, the IJ lacks jurisdiction to adjudicate it; and (3) Brito lacks standing to assert his argument that the applicable regulations are ultra vires. Accordingly, we deny the petition for review.

## I. Background

Petitioner Ramon Brito is a native and citizen of the Dominican Republic. Brito entered the United States without inspection in March 1996. One month later, Brito married his first wife, Mildred Brito (formerly Mildred Melendez). Approximately one year after his marriage, Brito filed an I-485 application to adjust his status to that of a person admitted for lawful permanent residence; his wife simultaneously filed an I-130 immigrant visa petition on Brito's behalf. While his I-485 application was pending, Brito requested, and received, "advance parole"[1] permission to visit his ailing mother in the Dominican Republic and then return to the United States. The Immigration and Naturalization Service ("INS")[2] granted Brito advance parole and warned him that in the event his application for adjustment of status was denied, he would be subject to removal proceedings. In December 1997, pursuant to his advance parole status, Brito departed the United States. He returned approximately one month later, and on January 16, 1998, Brito applied for admission to enter the United States. He was paroled in until January 15, 1999. On March 29, 2000, due to Mildred Brito's failure to report to a scheduled

---

[1] "Advance parole is a practice whereby the government agrees, before an alien arrives at a port of entry, to allow the alien's physical entry to the United States once he arrives (and while his immigration status is being resolved by immigration officials)." *Ibragimov v. Gonzales*, 476 F.3d 125, 128 n.3 (2d Cir. 2007).

[2] Pusuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, the INS was abolished and its functions reassigned to subdivisions of the Department of Homeland Security—the Bureau of Immigration and Customs Enforcement ("ICE") and the Bureau of United States Citizenship and Immigration Services ("USCIS"). *See Zerrei v. Gonzales*, 471 F.3d 342, 344 n.1 (2d Cir. 2006) (per curiam); *Spina v. Dep't of Homeland Sec.*, 470 F.3d 116, 119 n.1 (2d Cir. 2006). Because the actions at issue in this appeal were taken by the former INS, we continue to refer to that agency. *See, e.g.*, *Spina*, 470 F.3d at 119 n.1.

interview, the INS denied her I-130 petition. At the same time, the INS denied Brito's I-485 application and terminated his parole status.

On May 25, 2000, the INS served Brito with a notice to appear to show cause why he should not be removed from the United States. The INS charged that Brito was an "arriving alien" removable from the United States pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I) as an immigrant who at the time of admission was not in possession of a valid entry document. Brito denied he was an arriving alien and denied being removable as charged.

On March 5, 2003, through counsel, Brito notified the Immigration Court of the following matters: he had divorced his wife; he had remarried another United States citizen, Judy Brito (formerly Judy Almonte); his new wife had filed on Brito's behalf a second I-130 petition; and Brito had filed a second I-485 application. Brito asserted that he was improperly designated an arriving alien because he had been granted advance parole to leave and return to the United States.[3]

On April 27, 2005, the IJ determined that Brito was an arriving alien and removable as charged. Specifically, the IJ determined that an alien like Brito who seeks entry into the United States pursuant to a grant of advance parole is an arriving alien. The IJ pointed to 8 C.F.R. § 1.1(q) which provided that "[a]n arriving alien remains such even if paroled pursuant to [8

---

[3] Brito also argued to the IJ that he was erroneously designated an "arriving alien" because he had not been paroled in pursuant to 8 U.S.C. § 1182(d)(5). Brito does not raise that argument before this Court and it is, therefore, abandoned. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 542 n.1 (2d Cir. 2005).

U.S.C. § 1182(d)(5)]."[4] The IJ also determined that Brito is not eligible to adjust his status in immigration court.

Brito appealed to the BIA arguing that the IJ has jurisdiction over his application. Brito, however, did not challenge in his brief to the BIA the IJ's determination that Brito was an arriving alien. In its per curiam decision of July 31, 2006, the BIA affirmed the IJ's determination that Brito was an arriving alien. The BIA also affirmed the IJ's determination that Brito cannot pursue adjustment of status in immigration court but it did so for different reasons than those cited by the IJ. The BIA explained that while Brito's appeal was pending before it, the Attorney General had enacted interim regulations clarifying that, subject to one narrow exception, IJs lack jurisdiction to adjudicate applications for adjustment of status. That exception, explained the BIA, applies only where the alien has been placed in removal proceedings after having departed and returned to the United States pursuant to a grant of advance parole and seeks to adjudicate an application for adjustment he filed prior to his

---

[4] The second sentence of 8 C.F.R. § 1.1(q) was amended on May 12, 2006 to read:

> An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked. However, an arriving alien who was paroled into the United States before April 1, 1997, or who was paroled into the United States on or after April 1, 1997, pursuant to a grant of advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, will not be treated, solely by reason of that grant of parole, as an arriving alien under section 235(b)(1)(A)(i) of the Act.

Eligibility of Arriving Aliens in Removal Proceedings To Apply for Adjustment of Status and Jurisdiction To Adjudicate Applications for Adjustment of Status, 71 Fed. Reg. 27585, 27591 (May 12, 2006). For purposes of this petition for review, we apply the previous version that was in effect at the time of Brito's agency proceedings. We note that the amended definition varies only slightly from the earlier version.

departure. The BIA noted that Brito had filed his second I-485 application—the one at issue—after he returned to the United States and was placed in removal proceedings and that nothing in the regulations permits an alien to substitute a newly filed application for an old one. The BIA held that the IJ lacks jurisdiction to adjudicate Brito's application but noted that Brito can pursue his application for adjustment with the Bureau of United States Citizenship and Immigration Services ("USCIS"). Brito now petitions this Court for a review of the BIA's decision.

## II. Discussion

Brito argues that both the IJ and BIA erred in designating him an arriving alien, that the IJ has jurisdiction to adjudicate his application for adjustment of status even under immigration regulations as amended, and that the IJ has jurisdiction to adjudicate his application because the regulations prohibiting the adjudication of applications for adjustment of status by IJs are ultra vires. Because the BIA's decision affirms in part and modifies in part the decision of the IJ, we review the decision of the IJ as modified by the BIA. *See Dong Gao v. BIA*, 482 F.3d 122, 125 (2d Cir. 2007).

### A. Brito's Designation as an Arriving Alien

"A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ." 8 U.S.C. § 1252(d)(1). In *Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 107 & n.1 (2d Cir. 2007), we clarified that while not jurisdictional, issue exhaustion is mandatory. Indeed, in order to preserve an issue for review by this Court, the petitioner must not only raise it before the BIA, but do so with specificity.

6

*Steevenez v. Gonzales*, 476 F.3d 114, 117 (2d Cir. 2007) (citing *Foster v. INS*, 376 F.3d 75, 78

(2d Cir. 2004)).  Here, as the government asserts, Brito not only failed to contest before the BIA

his designation as an arriving alien, but also conceded that designation both in his statements of

reasons for appealing the decision of the IJ, *see* Attachment to Form EOIR-26, Notice of Appeal

from a Decision of an Immigration Judge, No. A75 800 038 (B.I.A. May 23, 2005) ("Mr. Brito

can adjust his status even though he is an arriving alien . . . ."), and in his brief on appeal to the

BIA, *see* Respondent's Brief on Appeal at 5 (B.I.A. May 26, 2006) (discussing whether Brito

satisfies a regulation that would allow the IJ jurisdiction to adjudicate an arriving alien's

application for adjustment of status).  Thus, he has failed to preserve for review by this Court the

issue of whether his designation as an arriving alien was erroneous.[5]

---

[5] We note, however, that even had Brito exhausted the issue of his designation as an arriving alien, we would affirm that designation.  The term "arriving alien," as it was defined in 8 C.F.R. § 1.1(q), *see supra* n.4, is

> an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . .  An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, shall not be considered an arriving alien for purposes of [INA § 235(b)(1)(A)(i)].

As we recently explained in *Ibragimov v. Gonzales*, 476 F.3d 125, 136 (2d Cir. 2007), 8 C.F.R. § 1.1(q) carves out only two exceptions to the otherwise blanket rule that an arriving alien remains such even if allowed to enter the United States pursuant to a grant of parole.  Neither of those exceptions apply in Brito's case.  The first exception applies only to aliens paroled in before April 1, 1997.  Brito was paroled in on January 16, 1998.  The second exception prevents aliens who have been granted advance parole from being considered arriving aliens, but only for purposes of INA § 235(b)(1)(A)(i)—a provision of the statute that deals specifically with *expedited* removal proceedings.  Because Brito, like the petitioner in *Ibragimov*, was afforded a regular, non-expedited hearing, that exception is likewise inapplicable.  *See Ibragimov*, 476 F.3d at 136.

B.  The IJ's Jurisdiction Under the Regulations

   *i. Statutory Background*

Because the regulations governing the IJ's jurisdiction over applications for adjustment of status, prior to their recent amendment, have been the subject of a considerable amount of litigation concerning their validity, we provide some history.

Prior to 1960, any alien in the United States no longer in possession of a valid immigrant visa but eligible for adjustment of status had to go abroad to apply for permanent resident status. *See Akhtar v. Gonzales*, 450 F.3d 587, 590 (5th Cir. 2006); *Succar v. Ashcroft*, 394 F.3d 8, 13 (1st Cir. 2005).  In 1960, Congress eliminated that burden by expanding eligibility for adjustment of status to include all aliens "inspected and admitted or paroled," allowing aliens in the United States, with or without valid visas, to apply for immigrant status without having to depart.  8 U.S.C. § 1255(a); *Akhtar*, 450 F.3d at 590; *Succar*, 394 F.3d at 14.  Section 1255(a) commits to the discretion of the United States Attorney General, "and under such regulations as he may prescribe," the granting of applications for adjustment of status.  8 U.S.C. § 1255(a).  In addition, 8 U.S.C. § 1252(a)(2)(B)(i) makes unreviewable the Attorney General's exercise of that discretion.  *Akhtar*, 450 F.3d at 590; *see also Succar*, 394 F.3d at 19 n.15.

In 1997, following the enactment of the Illegal Immigrant Reform and Immigration Responsibility Act ("IIRIRA"), the Attorney General issued new regulations to implement IIRIRA.  In addition to providing the above-mentioned definition of "arriving alien," *see* 8 C.F.R. § 1.1(q), the Attorney General promulgated 8 C.F.R. § 245.1(c)(8), which rendered certain categories of aliens, including any arriving alien in removal proceedings, ineligible to apply for adjustment of status, and 8 C.F.R. § 245.2(a)(1), which permitted arriving aliens not in removal

proceedings to apply for adjustment of status with the INS's district director. Section 245.2(a)(1) provided an exception to the general rule that arriving aliens in removal proceedings could not apply for adjustment of status—an arriving alien who entered the United States pursuant to a grant of advance parole could pursue before the IJ a renewed application for adjustment of status that had been filed before the alien's departure from the United States and denied by the district director. In sum, apart from this narrow exception, sections 245.1(c)(8) and 245.2(a)(1) had the combined effect of preventing arriving aliens in removal proceedings from filing for adjustment of status either with the district director (which they had been able to do prior to the enactment of the IIRIRA) or with the IJ. *Akhtar*, 450 F.3d at 591; *Succar*, 394 F.3d at 17-18.

Those regulations soon engendered a Circuit split on the resolution of the "inherent tension in a statutory scheme that explicitly defines who is eligible to apply [for adjustment of status] but gives [the Attorney General] unreviewable discretion to review the applications." *Akhtar*, 450 F.3d at 591-92. The regulations' challengers argued that because § 1255(a) provides to arriving aliens the ability to file for adjustment of status without mention of removal proceedings, it was beyond the discretion afforded to the Attorney General by that statute to withhold from a possibly large subsection of those aliens[6] the ability to file for adjustment of status. *See*, *e.g.*, *Succar*, 394 F.3d at 21.

---

[6] In *Akhtar*, 450 F.3d at 595 n.35, the Fifth Circuit noted "the disagreement over what percentage of paroled aliens are in removal proceedings" comparing statements by the First Circuit in *Succar*, 394 F.3d at 18, and the Third Circuit in *Zheng v. Gonzales*, 422 F.3d 98, 118 (3d Cir. 2005), that most arriving aliens are placed in removal proceedings, with an estimate by the Attorney General in the Eighth Circuit case *Mouelle v. Gonzales*, 416 F.3d 923, 930 n.9 (8th Cir. 2005), of only two to three percent.

The Eleventh, Ninth, Third and First Circuits all concluded, after applying to the regulations the two-step analysis articulated by the Supreme Court in *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), that because the regulations effected a categorical exclusion from adjustment of status eligibility a category of aliens explicitly made eligible to apply by § 1255(a), it was not within the discretion afforded the Attorney General by the statute to promulgate those regulations. *See Scheerer v. U.S. Attorney Gen.*, 445 F.3d 1311, 1322 (11th Cir. 2006); *Bona v. Gonzales*, 425 F.3d 663, 670-71 (9th Cir. 2005); *Zheng v. Gonzales*, 422 F.3d 98, 119-20 (3d Cir. 2005); *Succar*, 394 F.3d at 24.

In contrast, the Fifth and Eighth Circuits upheld the regulations as having constituted a reasonable exercise of the Attorney General's discretion. Those Circuits reasoned that because § 1255(a) gave the Attorney General unreviewable discretion to adjudicate the applications of all aliens eligible to apply for adjustment of status, thereby authorizing the Attorney General to deny on a case-by-case basis every application filed by arriving aliens in removal proceedings, there is no reason the Attorney General could not effectuate the same result by rule. *See Akhtar*, 450 F.3d at 594; *Mouelle v. Gonzales*, 416 F.3d 923, 929 (8th Cir. 2005), *vacated and remanded*,126 S. Ct. 2964 (2006) (remanding with instruction to reconsider in light of amendment to the regulations at issue).

Recognizing the Circuit split over the issue, and in the interest of avoiding "inconsistent application of the adjustment of status laws" that would result from continued litigation over their validity, the Attorney General decided to "resolve the conflict through rulemaking" and amended the disputed regulations. Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of

10

Status, 71 Fed. Reg. 27585, 27587 (May 12, 2006). The regulations as amended provide USCIS with jurisdiction to adjudicate adjustment of status applications for all arriving aliens, even those in removal proceedings. *Id.*; 8 C.F.R. § 245.2(a)(1); 8 C.F.R. § 1245.2(a). Although IJs, even after those amendments, remain without jurisdiction to adjudicate adjustment of status applications for arriving aliens in removal proceedings, 8 C.F.R. § 1245.2(a)(ii), the Attorney General retained the narrow exception that existed prior to those amendments that provides IJs with jurisdiction to adjudicate renewed adjustment of status applications filed by advance parolees prior to their departure from the United States. 71 Fed. Reg. at 27587-88. That exception, currently codified at 8 C.F.R. § 1245.2(a)(1)(ii), sets forth the following requirements:

> (ii) Arriving Aliens. In the case of an arriving alien who is placed in removal proceedings, the immigration judge does not have jurisdiction to adjudicate any application for adjustment of status filed by the arriving alien unless:
>
> (A) The alien properly filed the application for adjustment of status with USCIS while the arriving alien was in the United States;
>
> (B) The alien departed from and returned to the United States pursuant to the terms of a grant of advance parole to pursue the previously filed application for adjustment of status;
>
> (C) The application for adjustment of status was denied by USCIS; and
>
> (D) [Department of Homeland Security ("DHS")] placed the arriving alien in removal proceedings either upon the arriving alien's return to the United States pursuant to the grant of advance parole or after USCIS denied the application.

11

*ii. The IJ Lacks Jurisdiction to Adjudicate Brito's Application for Adjustment of Status*

Brito argues on appeal that the IJ has jurisdiction to adjudicate his application for adjustment of status because he satisfies all the requirements set out in 8 C.F.R. § 1245.2(a)(1)(ii). We agree with Brito that he applied for adjustment of status, was granted advance parole on the basis of that pending application, and had his application denied after his return to the United States. The only remaining question is whether Brito now seeks to adjudicate a previously filed application for adjustment of status (i.e., an application filed by Brito prior to his departure from the United States, in renewed form), or whether he seeks to adjudicate a new application for adjustment of status. *See Zheng*, 422 F.3d at 119 (explaining that the jurisdictional exception under 8 C.F.R. § 1245.2(a)(1)(ii) is "very narrow," as it allows the IJ jurisdiction over renewed applications for adjustment of status but "makes no provision for aliens making a first-time application while in removal proceedings").

Despite Brito's admission in his brief that the I-485 application for adjustment of status he now seeks to adjudicate "was a different application than the one for which he received the advance parole," Petitioner's Brief at 10, Brito asserted at oral argument, without explanation or citation to authority, that his current I-485 application should be considered a renewed version of his previously filed application. We disagree.

In *Matter of Lasike*, 17 I. & N. Dec. 445, 445 (B.I.A. 1980), the BIA explained that an application for adjustment of status characterized as renewed will nonetheless be treated as new if: (1) the alien was statutorily ineligible for adjustment of status based on the circumstances as they existed when the application was originally denied by the agency; and (2) the present

12

application is based on circumstances which have occurred since that denial. Likewise, *Matter of Jo*, 15 I. & N. Dec. 401 (B.I.A. 1975), involved an alien who sought adjustment of status as a non-preference immigrant and who claimed to be exempt from obtaining a labor certification under an exception for investors. The BIA held that the alien had filed a new, rather than renewed, application for adjustment of status because his application was based on an investment in a company entirely different and separate from the company in which he had previously invested, and it was that first investment upon which his previously filed and denied application for adjustment of status was based. *See id*. In *Ka Fung Chan v. INS*, 634 F.2d 248, 253-54 (5th Cir. 1981), the Fifth Circuit reaffirmed that principle in another investor-exception case holding that an application for adjustment of status was a new application where the alien had filed a previous application for adjustment of status based on an entirely separate investment made six months earlier. The Court stated,

> once an application for adjustment of status based on an original investment has been denied by the district director, and the correctness of the district director's determination with respect to the original investment is not disputed by the alien at deportation proceedings, a subsequent application based on an entirely new investment will be treated as a new rather than a renewed application . . . .

*Id.* at 256.[7]

---

[7] We note that *Ka Fung Chan* and *Matter of Jo* dealt with the definition of a renewed application for adjustment of status in the context of ascertaining the operative date by which an alien's visa eligibility is determined. In other words, if the alien's second application for adjustment were considered new, the operative date for determining visa eligibility would be the date upon which he or she filed that application, while, if considered renewed, the operative date would be the date upon which his or her original application was filed. Notwithstanding that context, we nonetheless find instructive the BIA's definition of "renewed" as explained in those cases.

In this case, at the time Brito's first I-485 application was denied, the I-130 application filed on his behalf by his first wife had also been denied, thus rendering him statutorily ineligible for adjustment of status. Brito never challenged that denial. His current application for adjustment of status is separate and distinct from his previous application as it is based on a different marriage to a different person. *See Ka Fung Chan*, 634 F.2d at 256; *Matter of Jo*, 15 I. & N. Dec. at 401. We hold, therefore, that the BIA correctly concluded that Brito's current application for adjustment of status is a new application and, therefore, an application that the IJ lacks jurisdiction to adjudicate.[8] *See* 8 C.F.R. § 1245.2(a)(1)(ii); *Zheng*, 422 F.3d at 119.

### iii. Brito Lacks Standing to Assert his Ultra Vires Argument

In addition to his argument that the IJ has jurisdiction to adjudicate his application for adjustment of status under 8 C.F.R. § 1245.2(a)(1)(ii), Brito argues, in the alternative, that the regulations precluding IJs from considering such applications are invalid because they prevent nearly all aliens from filing their adjustment of status applications with an IJ. Specifically, Brito argues that by preventing an alien from filing an adjustment of status application with an IJ, the regulations preclude that alien from petitioning the IJ to stay the execution of an order of removal while an application for adjustment is being adjudicated. Thus, an alien in that position is deprived of any "recourse should the Attorney General or the Department of Homeland Security decide to execute the order of removal." Petitioner's Brief at 15-16.

We cannot reach the merits of Brito's ultra vires argument, however, unless and until we satisfy ourselves that Brito has standing to assert it. A "'concrete and particularized . . . actual or

---

[8] We note that Brito has filed an application for adjustment of status before USCIS and awaits its review. We commend the efforts made by the Office of Immigration Litigation to ensure that Brito receives the review of that application to which he is statutorily entitled.

imminent'" injury that is neither "'conjectural'" nor "'hypothetical'" is one of three elements that comprise the "'irreducible constitutional minimum of standing.'" *See Port Washington Teachers' Ass'n v. Board of Educ. of Port Washington Union Free Sch. Dist.* 478 F.3d 494, 498 (2d Cir. 2007) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

Brito admits that "having filed a petition for review with this Court[,] . . . should the government take steps to execute the order of removal against him, [he] may move this Court to stay his removal." Petitioner's Brief at 17. Thus, even if the regulations Brito attacks might allow for overreaching by the Attorney General, he has not yet been, nor is he likely to be, injured as a result of it. At best, Brito speculates there could be hypothetical overreaching by the Attorney General that may injure unnamed third parties. He speculates further that DHS would, without regard to the alien's request to the contrary or the merit of his or her application for adjustment of status, execute a final order of removal before USCIS has a chance to adjudicate a pending application. Because Brito alleges only a potential for the agency's overreaching that has not yet occurred and because that potential is born of nothing more than hypothesis and conjecture, Brito lacks standing to assert his ultra vires argument. *See Port Washington Teachers' Ass'n*, 478 F.3d at 498.

### III. Conclusion

For these reasons we deny the petition for review.