21-6419 (L)
*Sultan v. Bondi*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of February, two thousand twenty five.

PRESENT:     RICHARD C. WESLEY,
                      STEVEN J. MENASHI,
                      BETH ROBINSON,
                                *Circuit Judges.*

_____

Ahamed Sultan,

              *Petitioner*,

        v.                                                        Nos. 21-6419 (Lead)
                                                                            23-6294 (Con)

Pamela Bondi, United States Attorney General,

              *Respondent*.*

_____

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland as the respondent. The record contains variations in the spelling of the petitioner's name; we follow the spelling used in the caption and in the appellate briefs.

*For Petitioner*:     MICHAEL E. PISTON (Xiaotao Wang, *on the brief*), New York, NY.

*For Respondent:*     SARAI M. ALDANA, Trial Attorney (Brian Boynton, Principal Deputy Assistant Attorney General, Civil Division; Cindy S. Ferrier, Assistant Director; Micah Engler, Trial Attorney, *on the brief*), Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of these petitions for review of decisions of the Board of Immigration Appeals ("BIA"), it is hereby ORDERED, ADJUDGED, and DECREED that the petitions are DENIED.

Petitioner Ahamed Sultan petitions for review of a decision of the BIA that affirmed the decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *See In re Ahamed Sultan*, No. A 206 427 218 (B.I.A. July 8, 2021), *aff'g* No. A 206 427 218 (Immigr. Ct. N.Y.C. Oct. 25, 2018).

Following a hearing and the admission of evidence, the IJ denied Sultan's application for relief on the ground that he was not credible. The IJ found him not to be credible because, among other reasons, (1) his testimony about the loss of his passport was inconsistent with his credible fear interview; (2) his statements regarding when his wife and daughter moved to escape persecution were inconsistent with record evidence; and (3) his explanation for the inconsistency regarding the move was implausible. The BIA affirmed the decision of the IJ.

Sultan asks us to grant his petition for review, vacate the decision of the BIA, and remand for further consideration. First, Sultan argues that the

agency erred in its adverse credibility determination. He argues that his credible fear interview was not properly admitted and lacked the necessary hallmarks of reliability, and as a result the inconsistency between the interview and his testimony was an improper basis for a credibility determination. Second, Sultan argues that the IJ misunderstood his testimony regarding his family's move and that his testimony was neither inconsistent nor implausible. Third, Sultan argues that the IJ erred in not considering evidence of future persecution.

We are not persuaded. First, to the extent that Sultan argues that the IJ erred by admitting the record of his credible fear interview without explicitly considering the arguments he presses now, Sultan did not exhaust that argument, so we cannot consider it for the first time in a petition for review. *See* 8 U.S.C. § 1252(d)(1). To the extent that he generally argues that the agency's adverse credibility determination was not supported by substantial evidence because his credible interview was not reliable, we disagree.

Second, the agency's adverse credibility determination was supported by substantial evidence. Sultan proposes an alternative interpretation of his testimony and the record evidence. But because it is not "plain that no reasonable fact-finder could make such an adverse credibility ruling," we must "defer" to the credibility determination here. *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008). Third, Sultan did not raise his argument about future persecution before the BIA, so it is also unexhausted.

Sultan additionally petitions for review of the decision of the BIA denying his motion to reopen his case. *See In re Ahamed Sultan*, No. A 206 427 218 (B.I.A. Feb. 27, 2023). He argues that his counsel before the IJ was ineffective. To establish ineffective assistance of counsel, Sultan must demonstrate both "that competent counsel would have acted otherwise" and "that he was prejudiced by his counsel's performance."

*Rabiu v. INS*, 41 F.3d 879, 882 (2d Cir. 1994) (quoting *Esposito v. INS*, 987 F.2d 108, 111 (2d Cir. 1993)). Even assuming that his counsel's performance was deficient, Sultan has not shown that the purportedly deficient performance caused him prejudice.

We deny the petitions for review.

## BACKGROUND

In 2013, Sultan, a citizen of Bangladesh from the Noakhali District, entered the United States without valid entry documents and was placed in removal proceedings. Sultan then applied for asylum, withholding of removal, and CAT relief, claiming that he had suffered past persecution on account of his political opinion.

## I

According to Sultan's application, starting in January 2010, he was an active member of the Bangladesh Nationalist Party ("BNP"), the rival of the ruling Awami League Party. In January 2012, he became publicity secretary of the "Ward BNP Committee." Cert. Admin. R. 928.[1] "Due to my work for BNP," Sultan wrote, "Awami League supporters targeted me for aggressive and violent reprisals." Cert. Admin. R. 928.

Sultan claimed that Awami League members "routinely attacked BNP rallies," *id.* at 929, and harassed him for participating in the BNP. Following one BNP rally in March 2013, he recounted, a group of Awami League members attacked Sultan with hockey sticks, beat him to unconsciousness, and stabbed him. Sultan reported the attack to the police, but the police "told [him] that they could do nothing as Awami League was in power." *Id*. at 930. On July 30, 2013, Sultan was attacked by another group

---

[1] Because Sultan filed two petitions for review, certified administrative records were filed in both No. 21-6419 and No. 23-6294. This opinion relies on the certified administrative record filed in No. 23-6294.

4

of individuals who informed him that the beating was his "reward for being a BNP and warned [him] to stick to driving and to quit BNP politics and not get involved in its politics anymore." *Id*. at 930. The police again took no action.

Sultan stated that he fled his home on August 4, 2013, after a group of Awami League "terrorists" with hockey sticks and knives approached his home. *Id*. at 931. He went to Dhaka to stay in a house owned by his sister, who is a lawful permanent resident of the United States. Sultan left Bangladesh on August 14, 2013, and, following a four-month journey through Central America and Mexico, arrived at Hidalgo, Texas, on December 19, 2013.

## II

On October 25, 2018, following a hearing with Sultan, an IJ denied relief. The IJ granted Sultan's motion to admit certain late-filed evidence, but the IJ denied his motion to admit other evidence that could have been offered earlier. The IJ declined, for example, to admit a late-filed letter from Sultan's sister because his sister, "who lives in Brooklyn," was "available to provide evidence, notwithstanding [Sultan's] assertion that conditions in Bangladesh prevented him from getting the evidence sooner." *Id*. at 228.

Despite admitting late-filed evidence, the IJ found Sultan not to be credible and denied his application. The IJ based the adverse credibility determination on several grounds. First, the IJ identified an inconsistency between (1) Sultan's testimony "on three occasions" during the hearing "that he possessed a new passport because his old passport was damaged on the trip to the United States" and (2) Sultan's statements during his credible fear interview that "he did not have his passport because when transiting Bolivia, his [smuggling] agent took his passport and did not return it." *Id*. at 232; *see also id.* at 114 (referencing the "smuggling agent"). The IJ noted that Sultan was unable to explain the inconsistency.

5

Second, the IJ identified an internal inconsistency in Sultan's testimony at the hearing. When Sultan was "asked about his credible fear interview, [he] stated he did not remember the interview. But then, he began to explain that during the interview, he had trouble understanding the interpreter and did not seek to clarify his responses to the interpreter because he was so apprehensive." *Id*. at 232-33. The IJ found that these statements were "directly contradict[ory]." *Id*. at 233.

Third, the IJ identified an inconsistency between Sultan's testimony and the evidentiary record—particularly Sultan's wife's affidavit. As the IJ explained it, Sultan "testified his wife and daughter … moved from his village to the city of Dhaka, a distance of approximately 400 kilometers, on August 8th, 2013," and he "reaffirmed, at least eight times during his sworn testimony, that his family relocated on that date." *Id*. In the affidavit, however, Sultan's wife "stated that she moved to Dhaka on May 25th, 2014." *Id*. In addition, the IJ found Sultan's explanation for the inconsistency to be implausible. When confronted with the inconsistency, Sultan testified that "since his wife is the one who moved, she would know the dates better." *Id.* Even though Sultan "acknowledged speaking with her on the phone on several occasions," he "stated that he had never asked her where she lived from the time between August 8th, 2013 to the 25th of May, 2014." *Id.* The IJ found this testimony implausible:

> Given that the respondent is basing the entirety of his asylum claim on fear of persecution from Awami party members and given that the respondent's wife alleges that she fled to the city of Dhaka to escape persecution from Awami party members, the court finds it entirely implausible that the respondent would be unaware of where his wife was living during a timeframe when she allegedly, and according to his testimony, had fled to avoid persecution.

6

*Id.* Finding Sultan not to be credible in his testimony regarding past persecution, the IJ denied his application for relief.

On July 8, 2021, the BIA dismissed Sultan's appeal because Sultan had "not established clear error" in "the dispositive adverse credibility finding." *Id.* at 47. That finding "was based upon the totality of circumstances which included inconsistencies between the respondent's testimony and his 2014[] credible fear interview; internal inconsistencies in his testimony; and problems with his documentary evidence." *Id.* (citations omitted). The BIA further concluded that Sultan had "not shown he suffered prejudice resulting from the exclusion of his evidence." *Id.* at 48.

Sultan then moved to reopen the case, arguing that his prior attorney provided ineffective assistance of counsel. Specifically, Sultan argued that "[d]ue to prior counsel's ineffectiveness, he did not review evidence provided." *Id.* at 12. Sultan also claimed that his prior counsel "did not advise properly about what evidence was to be submitted" and erred in "fail[ing] to call [his] sister to testify." *Id.*

The BIA denied the motion to reopen. The BIA concluded that Sultan had "not met his burden of demonstrating either error or prejudice in his prior attorney's representation before the Immigration Court." *Id.* at 3. The BIA acknowledged that Sultan's counsel had failed to file certain evidence by the requisite deadline. But the IJ "accepted most of [the late-filed] documents into evidence" and "[t]he documents that the Immigration Judge declined to admit," such as the letter from Sultan's sister, "were not central to the Immigration Judge's decision." *Id.* at 4. Moreover, the BIA noted, "the affidavits were not accepted in part because the declarants did not have firsthand knowledge of all the events they described." *Id.* The BIA therefore concluded that Sultan "ha[d] not established prima facie eligibility for relief had all the submitted documents been timely filed and accepted." *Id.*

The BIA also was "not persuaded that the adverse credibility finding was the result of ineffective assistance by the prior attorney" or that the sister's testimony would have affected the IJ's decision because "she had no firsthand knowledge concerning his passport or his claim of persecution in Bangladesh, as she was residing in the United States during the relevant period." *Id.*

Sultan petitioned this court for review of both decisions.

**DISCUSSION**

We deny Sultan's petitions for review. We conclude that the adverse credibility determination on which the agency based its denial of relief was supported by substantial evidence. Sultan raises a new claim of fear of future persecution that was not raised before the BIA and is therefore unexhausted. We further conclude that the BIA did not err in denying Sultan's motion to reopen based on ineffective assistance of counsel.

**I**

"When the BIA issues an opinion, the opinion becomes the basis for judicial review of the decision of which the alien is complaining." *Bhagtana v. Garland*, 93 F.4th 592, 593 (2d Cir. 2023) (internal quotation marks omitted). Nevertheless, we have considered both the BIA's and the IJ's opinions "for the sake of completeness." *Wangchuck v. DHS*, 448 F.3d 524, 528 (2d Cir. 2006). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). "Accordingly, we review the agency's decision for substantial evidence and must defer to the factfinder's findings based on such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Singh v. Garland*, 11 F.4th 106, 113 (2d Cir. 2021) (internal quotation marks omitted). "The scope of review under the substantial evidence standard is exceedingly narrow, and we will uphold the BIA's decision unless the petitioner demonstrates that the record

8

evidence was so compelling that no reasonable factfinder could fail to find him eligible for relief. By contrast, we review legal conclusions de novo." *Id.* (internal quotation marks and citation omitted).

An applicant for asylum must establish past persecution or a well-founded fear of persecution and that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason" for that persecution. 8 U.S.C. § 1158(b)(1)(B)(i); 8 C.F.R. § 1208.13(b). To establish eligibility for withholding of removal, an applicant must show that his or her "life or freedom would be threatened" in the country of removal because of the applicant's "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). And to qualify for relief under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). An applicant's testimony "may be sufficient to sustain the applicant's burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also id.* § 1231(b)(3)(C); *Jian Liang v. Garland*, 10 F.4th 106, 113 (2d Cir. 2021).

Previously, "[t]he law of our circuit provided that when an IJ based an adverse credibility determination on inconsistencies in an asylum applicant's testimony or between the testimony and the documents the applicant submitted," the IJ needed to "demonstrate a nexus between inconsistencies in an asylum applicant's testimony and the applicant's claims" and "establish that the inconsistencies were material to the applicant's claims for asylum." *Xiu Xia Lin*, 534 F.3d at 165. This "previous holding that an IJ may not base an adverse credibility determination on inconsistencies and omissions that are 'collateral or ancillary' to an applicant's claims," however, "has been abrogated by the amendments to

the statutory standard imposed by the REAL ID Act." *Id.* at 167. Those amendments provided as follows:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, *without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.*

8 U.S.C. § 1158(b)(1)(B)(iii) (emphasis added). As a result, "for cases filed after May 11, 2005, the effective date of the Act, an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible," *Xiu Xia Lin*, 534 F.3d at 167 (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)), provided that "the agency has provided 'specific, cogent reasons for the adverse credibility finding [that] bear a legitimate nexus to the finding,'" *Hong Fei Gao v. Sessions*, 891 F.3d 67, 77 (2d Cir. 2018) (quoting *Xiu Xia Lin*, 534 F.3d at 166). "We defer therefore to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167. Because of the "*falsus in uno, falsus in omnibus* principle," *Likai Gao v. Barr*, 968 F.3d 137, 148 (2d Cir. 2020), "even a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible," *id.* at 145 n.8.

10

**A**

We conclude that there was substantial evidence to support the IJ's adverse credibility determination as to at least three of the IJ's bases for the determination: (1) Sultan's testimony about the loss of his passport was inconsistent with his credible fear interview; (2) Sultan's statements regarding when his wife and daughter moved to Dhaka to escape persecution from Awami League members were inconsistent with record evidence; and (3) Sultan's explanation for the inconsistency regarding the move to Dhaka was implausible.

First, as to the passport, there was a clear inconsistency between Sultan's statement at his credible fear interview that "[i]n Bolivia, the [smuggling] agent took my passport and didn't give it back to me," Cert. Admin. R. 364, and his testimony at his hearing that his passport "was damaged on my way here to this country and I was not able to find it and I had the copy of it," *id*. at 108. Sultan does not argue that his statement at the hearing was consistent with his statement at the credible fear interview. Consequently, he has not "demonstrate[d] that the record evidence was so compelling that no reasonable factfinder could fail to find" that Sultan was credible despite the inconsistency between his credible fear interview and his testimony. *Singh*, 11 F.4th at 113 (quoting *Mu Xiang Lin v. DOJ*, 432 F.3d 156, 159 (2d Cir. 2005)).

Instead, Sultan contends that the "credible fear interview transcript to which it was compared was not properly admitted" and that the agency erred in treating the credible fear interview as reliable. Petitioner's Br., No. 21-6419, at 21 (citing *Ming Zhang v. Holder*, 585 F.3d 715 (2d Cir. 2009)). To the extent that Sultan argues the IJ erred by admitting the interview without explicitly considering the arguments he now presses, the government correctly observes that his contention was not adequately presented to the BIA and therefore is unexhausted. "[I]n order to preserve

11

an issue for review by this Court, the petitioner must not only raise it before the BIA, but do so with specificity." *Brito v. Mukasey*, 521 F.3d 160, 164 (2d Cir. 2008); *see also Ud Din v. Garland*, 72 F.4th 411, 419-20 & n.2 (2d Cir. 2023). To the extent that Sultan generally argues that the agency's adverse credibility determination was not supported by substantial evidence because his credible fear interview was not reliable, we disagree: the interview was memorialized in a typed document that appears to recount the questions asked and Sultan's answers; a Bengali interpreter participated in the interview; Sultan did not indicate during the interview that he did not understand the questions; and the questions asked were designed to determine the basis of a potential asylum claim.

Second, as to the date of the move to Dhaka, Sultan testified repeatedly before the IJ that his family moved to Dhaka on August 8, 2013, but his wife recounted in an affidavit that she moved to Dhaka after an incident with several Awami League supporters on May 25, 2014. An IJ may base an adverse credibility determination on an inconsistency between the applicant's "statements [and] other evidence of record" without regard to whether the inconsistency "goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Sultan, however, disputes that his testimony was inconsistent with his wife's affidavit. He argues that the IJ misread the affidavit. According to Sultan, the best reading of the affidavit is that his wife moved to Dhaka on August 7, 2013—only one day off from Sultan's testimony that the date was August 8, 2013—and that she "moved back to Bangladesh at some unknown time, and then moved back (to another part of Dhaka) after the May 25, 2014 incident." Petitioner's Br., No. 21-6419, at 35-36, 36 n.7.

According to his wife's affidavit, Sultan "went to Dhaka at his sister's house and stayed there for a few days. Later I went there with my 18 months old daughter. Then one week later he left Bangladesh for the USA on August 14, 2013." Cert. Admin. R. 644. It is possible to understand the statement that

12

Sultan left Bangladesh "one week later" as indicating that he left Bangladesh one week after his wife moved with their daughter to Dhaka. But it is also possible to understand the affidavit as indicating that Sultan left Dhaka one week after *he* got there. On this understanding, his wife's statement that she went to Dhaka with their daughter "[l]ater"—after Sultan went there—indicates that she moved there at some later time not tied to Sultan's own arrival in or departure from Dhaka. The context supports the second interpretation because, in the next paragraph, the affidavit explains that—after the encounter with Awami League supporters on May 25, 2014—Sultan's wife "took [their] daughter and moved to Dhaka to hide from" the Awami League supporters and to "ensure our safety." *Id*. Given these possible interpretations—especially in light of Sultan's response to the inconsistency described below—a reasonable factfinder could determine that Sultan's testimony was inconsistent with this record evidence. *Singh*, 11 F.4th at 113. Because we cannot say that "no reasonable fact-finder could make such an adverse credibility ruling," we "defer" to the IJ's determination here. *Xiu Xia Lin*, 534 F.3d at 167.

Third, the IJ found Sultan's testimony that he did not know when his wife moved to be implausible. When presented with the inconsistency about when the move occurred, Sultan said that "[m]aybe I'm making a mistake … because she's the one who travelled, so she may be correct." Cert. Admin. R. 152. He then claimed that he did not know when his wife had moved because, despite speaking with her during the period between August 8, 2013, and May 25, 2014, he "never asked her" where she was living. *Id*. at 154. The IJ found "it entirely implausible that [Sultan] would be unaware of where his wife was living during a timeframe when she allegedly, and according to his testimony, had fled to avoid persecution," given that "the entirety of his asylum claim" was based on fear of that persecution. *Id*. at 233.

13

An IJ "may base a credibility determination on … the inherent plausibility of the applicant's … account." 8 U.S.C. § 1158(b)(1)(B)(iii). And we cannot say that "any reasonable adjudicator would be compelled to conclude" that Sultan was credible despite the implausibility of his explanation. *Id.* § 1252(b)(4)(B). We again must "defer" to the IJ's determination. *Xiu Xia Lin*, 534 F.3d at 167.

Given these three bases for the adverse credibility determination, we conclude that the determination was supported by substantial evidence. *Cf. Likai Gao*, 968 F.3d at 145 n.8 ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully.").[2]

**B**

Sultan additionally argues that, even if the IJ correctly found him not to be credible regarding past persecution, "the record nevertheless shows that he has a well-founded fear of future persecution." Petitioner's Br., No. 21-6419, at 41. But this claim was not raised before the BIA and is therefore unexhausted. We "may review a final order of removal *only* if … the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1) (emphasis added). The Supreme Court has held that "§ 1252(d)(1)'s exhaustion requirement is not jurisdictional" but is "subject to waiver and forfeiture." *Santos-Zacaria v. Garland*, 598 U.S. 411, 423 (2023). However, "calling a rule nonjurisdictional does not mean that it is not mandatory." *Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012). To the contrary, "statutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *Donnelly v. CARRP*, 37 F.4th 44, 56 (2d Cir.

---

[2] For this reason, even if the IJ erred in characterizing Sultan's testimony regarding his memory of the credible fear interview as internally inconsistent, *see* Cert. Admin. R. 232-33, "we do not think the error warrants any relief from this court," *Likai Gao*, 968 F.3d at 143 n.4, because the IJ "would still have reached the same adverse credibility determination based on the totality of other inconsistencies," *id.* at 147.

2022) (alteration omitted) (quoting *Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998)). Because the government has raised the issue of exhaustion here, we may not consider this argument for the first time in a petition for review. *See* 8 U.S.C. § 1252(d)(1).

## II

We also see no error in the agency's denial of Sultan's motion to reopen based on ineffective assistance of counsel.

To establish ineffective assistance of counsel, a movant must demonstrate both "that competent counsel would have acted otherwise" and "that he was prejudiced by his counsel's performance." *Rabiu*, 41 F.3d at 882 (quoting *Esposito*, 987 F.2d at 111). To demonstrate prejudice, a movant must "make a *prima facie* showing that, but for counsel's ineffectiveness, he would have been eligible for asylum relief, and could have made a strong showing in support of his application." *Scarlett v. Barr*, 957 F.3d 316, 326 (2d Cir. 2020) (internal quotation marks and alteration omitted).

In his motion to reopen, Sultan said that his prior counsel filed evidence late, failed to advise him about what evidence was required, and failed to review evidence with him. In particular, he asserted that his counsel failed (1) to advise him to obtain a medical expert's evaluation in the United States and to call his sister to testify, (2) to review his wife's letter and his credible fear interview with him, and (3) to argue that there is a pattern or practice of the Awami League abusing members of opposing parties in Bangladesh. But the IJ admitted significant late-filed evidence—including the affidavits from Sultan's wife, his brother, and his mother-in-law, as well as Sultan's own declaration—and the IJ did not base the adverse credibility determination on the lack of a medical evaluation or a statement from Sultan's sister.

15

The IJ reasonably declined to admit the late-filed letter from his sister because she lived in Brooklyn and "clearly was available to provide evidence, notwithstanding the respondent's assertion that conditions in Bangladesh prevented him from getting the available evidence sooner." Cert. Admin. R. 228. In any event, his sister lacked firsthand knowledge of Sultan's passport issues, the date of his wife's move, or even his persecution generally, so there is no reason to conclude that admission of the affidavit or other testimony would have affected the adverse credibility determination. *See id.* at 656 ("As I was not living in Bangladesh at that time, I have not witnessed any of the oppressions that happened with my brother.").

Sultan also did not explain how reviewing his credible fear interview would have changed his testimony about his passport, given that he told two different stories about why he needed a new one. As the BIA explained, Sultan "did not testify that he didn't remember what happened to his passport such that he needed to be reminded; rather, he volunteered a significantly different story in his testimony than he did in his credible fear interview." *Id.* at 4. Nor did Sultan explain how reviewing his wife's affidavit would have altered his own testimony about when she moved to Dhaka. Sultan "was emphatic in his testimony that his wife fled their home in August 2013, and only appeared unsure or confused later in the hearing on cross-examination." *Id.* at 4-5.

Finally, if Sultan's counsel had argued that there was a pattern or practice of the Awami League abusing members of opposing parties, it would not have affected the IJ's determination that Sultan was not credible. The adverse credibility determination was based on several inconsistencies unrelated to the country conditions in Bangladesh.

For these reasons, Sultan has failed to show that "but for counsel's ineffectiveness, he would have been eligible for asylum relief, and could

have made a strong showing in support of his application." *Scarlett*, 957 F.3d at 326 (internal quotation marks and alteration omitted). Because Sultan has not shown prejudice, the BIA did not err by denying his motion to reopen.

## CONCLUSION

For the foregoing reasons, the petitions for review are denied. All pending motions and applications are denied and stays vacated.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court