*Gao v. Barr*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2019

No. 18-358-ag

LIKAI GAO
*Petitioner*,

v.

WILLIAM P. BARR, UNITED STATES ATTORNEY GENERAL,
*Respondent*.

On Petition for Review of a Final Order of the
Board of Immigration Appeals

ARGUED: MARCH 9, 2020
DECIDED: JULY 28, 2020

Before: RAGGI, LOHIER, and MENASHI, *Circuit Judges*.

On a petition for review of a Board of Immigration Appeals decision upholding an order of removal, petitioner challenges the denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture. Petitioner specifically faults the agency's determination that his applications were not supported by credible evidence. Petitioner maintains that he sufficiently explained inconsistencies in his testimony to preclude those inconsistencies from providing substantial evidence of adverse credibility.

PETITION FOR REVIEW DENIED.

_____

WEI GU, Law Offices of Wei Gu, Albertson, New York, *for Petitioner*.

JOHN D. WILLIAMS, Trial Attorney, Office of Immigration Litigation (Russell J. E. Verby, Senior Litigation Counsel, Office of Immigration Litigation, *on the brief*), *for* Ethan P. Davis, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C, *for Respondent*.

_____

REENA RAGGI, *Circuit Judge*:

Petitioner Likai Gao, a citizen of the People's Republic of China, seeks review of a Board of Immigration Appeals ("BIA") decision affirming an immigration judge's ("IJ") order of removal. *See In re Likai Gao,* No. A 206 289 828 (B.I.A. Jan. 19, 2018), *aff'g* No. A 206 289

828 (Immig. Ct. N.Y.C. Dec. 20, 2016). Gao submits that the agency should have granted him relief from removal—whether in the form of asylum, withholding of removal, or protection under the Convention Against Torture ("CAT")—because he faces religious persecution if removed to China. He argues that the agency's reliance on an adverse credibility determination to deny him relief from removal was error because "[a]ll . . . areas" of evidentiary inconsistency "ha[d] been explained by [him] and can be reasonably reconciled with the information in the record." Pet'r Br. at 11; *see id.* at 14. Because that argument fails on the merits, we deny Gao's petition for review, leaving the agency free to enforce its order of removal.[1]

## I. Background

### A. Gao Arrives in the United States and Overstays His Visa

Leaving behind a wife and two children in China, Gao entered the United States on September 21, 2013. Possessed of a non-immigrant C1 transit visa, Gao was authorized to stay in this country until October 19, 2013. Instead of departing by that date, however, Gao remained in the United States, and on January 13, 2014—three months after his visa expired—filed applications for asylum,

---

[1] At oral argument, Gao's counsel seemingly switched course, arguing not that "[a]ll" inconsistencies "ha[d] been explained," Pet'r Br. at 11, but, rather, that the IJ had not afforded his client an opportunity to explain certain inconsistencies. It is well established that arguments raised for the first time at oral argument are deemed "waived." *United States v. Ramos*, 677 F.3d 124, 129 n.4 (2d Cir. 2012). Thus, our focus in this opinion is on the arguments made in Gao's brief.

withholding of removal, and CAT relief.[2] Late the following year, on November 5, 2015, the Department of Homeland Security initiated removal proceedings against Gao under 8 U.S.C. § 1227(a)(1)(B), charging him with being in the country without authorization.

## B. Immigration Hearing

### 1. Testimonial Evidence

On April 19, 2016, Gao appeared before an IJ and, through counsel, conceded removability. The IJ scheduled a hearing for July 28, 2016, on Gao's applications for relief from removal.

At the hearing, Gao, testifying with the assistance of a Mandarin interpreter, explained that he feared that, in China, government officials would persecute and torture him for practicing his Christian religion. Gao testified that this fear was well founded

---

[2] To secure asylum, an alien must demonstrate that he is a "refugee," *i.e.*, a person unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." 8 U.S.C. § 1101(a)(42)(A); *see id.* § 1158(b); 8 C.F.R. § 1208.13(a); *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013).

To be granted withholding of removal, an alien bears the heavier burden of demonstrating a clear probability of persecution on one of the aforementioned protected grounds. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b); *Scarlett v. Barr*, 957 F.3d 316, 327–28 (2d Cir. 2020).

To qualify for CAT relief, an alien must show that it is more likely than not that upon return to the country of removal, he will be subjected to "torture," "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2); *see id.* §§ 1208.16(c)(2), 1208.17(a); *Scarlett v. Barr*, 957 F.3d at 334.

4

because he had previously experienced religious persecution in May 2009. *See* 8 C.F.R. § 1208.13(b)(1); *Mei Fun Wong v. Holder*, 633 F.3d 64, 68 (2d Cir. 2011) ("A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution.").

In support of his claim of past persecution, Gao testified that he was introduced to Christianity sometime in 2005 when a friend invited him to a church gathering some distance from his Gaocheng home. Thereafter, Gao sporadically attended services at the church as his schedule permitted. Sometime in 2008, however, Gao stopped going to the church and, instead, hosted Bible study gatherings in his home for family and friends.

Gao testified that it was during such a gathering on May 10, 2009, that Chinese police forcibly entered his home, accused Gao and the seven or eight friends in attendance of conducting cult activities, arrested all of them, and transported them to the local police station.[3] Gao stated that, at the station, he was interrogated and beaten. The next day, Gao was transferred to a detention facility, where he remained incarcerated until November 11, 2009.

Following his release and for the four years until his 2013 departure to the United States, Gao neither attended nor hosted any

---

[3] Gao testified that his family members also generally participated in Bible study gatherings at their home, but they were all away on May 10, 2009, and thus avoided arrest.

religious gatherings for fear of arrest. From time to time, police officers visited Gao's home and warned him against such activities.

After his September 2013 arrival in the United States, Gao settled in Flushing, Queens. In December of that same year, he began attending the New York New Day Church, headed by Presbyterian minister Jai Hyuck Kwak. Pastor Kwak, whose first language was Korean but who testified in English, reported baptizing Gao in January 2014 and seeing him regularly attend the church's Sunday services.

## 2. Adverse Credibility Determination

In denying Gao relief from removal, the IJ found his testimony not to be credible based on both perceived inconsistencies and suspect demeanor.

The IJ identified the following inconsistencies:

(1) Gao testified that he had been hosting Christian gatherings at his home for a year before his May 2009 arrest, but he also testified that such gatherings started in December 2008, which was five months before the arrest;

(2) Gao testified to two reasons why he stopped attending church and started hosting Christian gatherings in his home—the distance of the church location from his home, and the church's discussion of Communist policy—but he made no mention of either reason in his earlier written statement, there professing that he began

holding home gatherings as part of a "mission" to help "thousands [of] people bec[o]me Christian," Admin. R. at 118;

(3) Gao testified that more than ten police officers surrounded his house at the time of his arrest, but he made no mention of either the number of officers nor their surrounding the house in his written statement, there stating that they stormed into the premises;[4]

(4) Gao testified that he was interrogated at the police station by four officers, but his written statement reported two police interrogators;

(5) Gao testified that he told police interrogators that the government protected freedom of speech, but in his written statement, he reported invoking freedom of religion; and

(6) Gao testified that he was held in detention for five months, but he also testified that he was released on November 11, 2009, which was six months after his arrest.

In finding Gao's credibility further undermined by his demeanor, the IJ observed that Gao was sometimes not responsive to direct questioning. Specifically, when asked questions that went

---

[4] The IJ's characterization was not entirely accurate. Gao did not testify to officers surrounding his house. Rather, he stated that "ten plus" officers forcibly entered his house and surrounded the persons inside. Admin. R. at 67. For reasons explained *infra* at 17 n.10, we do not think the error warrants any relief from this court.

outside the four corners of his written statement, Gao had difficulty responding.

The IJ concluded that corroborative evidence did not rehabilitate Gao's credibility. The IJ explained that statements from Gao's wife and a fellow church member about the May 10, 2009 arrests warranted minimal weight because the authors were interested parties who were not available for cross-examination.[5] Meanwhile, the IJ found Pastor Kwak's testimony not to be credible, noting that he testified inconsistently about speaking with Gao, initially stating that he had never spoken to him and subsequently stating that he had never spoken to him about his immigration status. Also, letters signed by Pastor Kwak were inconsistent in reporting when Gao joined the New Day Church, with a 2014 letter dating Gao's membership to December 29, 2013, and a 2016 letter dating that membership to December 15, 2013.

### 3.    Denial of Relief from Removal

Having found Gao not to have credibly established past persecution or a well-founded fear of future persecution, the IJ concluded that he did not qualify for asylum or withholding of removal. The IJ acknowledged that an adverse credibility finding does not necessarily foreclose CAT relief, which may be supported through objective evidence alone. *See Xiao Ji Chen v. U.S. Dep't of*

---

[5] Gao's wife also appears to have had no direct knowledge of the May 10, 2009 events recounted in her letter because, according to Gao, members of his family were all away on that date and, thus, avoided arrest. *See supra* at 5 n.3.

8

*Justice*, 434 F.3d 144, 163 & n.18 (2d Cir. 2006).  Nevertheless, the IJ concluded that Gao failed to qualify for CAT relief because he adduced no such objective evidence.

## C.    BIA Appeal

In appealing to the BIA, Gao effectively acknowledged that all three of his claims for relief from removal depended on the credibility of his testimony.  The BIA affirmed the IJ decision, identifying no clear error in the challenged adverse credibility finding.  Insofar as Gao faulted the IJ for failing to provide him with an opportunity to explain certain inconsistencies, the BIA concluded that no such opportunity was required because the inconsistencies were clear from the record.[6]

## D.    Petition for Review

Gao timely petitioned this court for review, arguing that he credibly established his claims for relief from removal.  Significantly, his brief on appeal does not challenge the IJ's adverse demeanor finding.   Nor does it argue that Gao was denied an adequate

---

[6] *See Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir. 2005) (holding that IJ may find asylum applicant not credible based on inconsistency in his account affording substantial evidence "without soliciting from the applicant an explanation for the inconsistency").  A dissenting Board member thought Gao should have been afforded an opportunity for explanation because the identified discrepancies were not "glaring or dramatic."  Admin. R. at 4; *see Ming Shi Xue v. Bd. of Immigration Appeals*, 439 F.3d 111, 125 (2d Cir. 2006) (construing *Majidi* to place burden on alien to explain contradictions clear on their face, but holding that IJ should afford alien opportunity to reconcile contradictions that are not "self-evident").  The dissenting member further faulted the IJ for failing fully to consider the explanations that Gao did provide.

opportunity to explain evidentiary inconsistencies.[7]  Rather, Gao's brief offers a single argument for why the IJ erred in not finding him credible, *i.e.*, Gao, in fact, reasonably explained "[a]ll" identified inconsistencies.  Pet'r Br. at 11.

## II.    DISCUSSION

### A.    Standard of Review

Because Gao petitions for review of a BIA decision that affirms an IJ decision without rejecting any part of its reasoning, this court properly considers both decisions in deciding whether to grant the requested review.  *See, e.g.*, *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 166 (2d Cir. 2008).  Where, as here, a petition for review challenges an adverse credibility finding, the alien bears a particularly heavy burden because we review such a factual determination "under the substantial evidence standard," which—absent some legal error— requires us to "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."  *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (internal quotation marks omitted); *see* 8 U.S.C. § 1252(b)(4)(B).  In applying that standard, we are mindful that the law affords an alien seeking relief from removal "no presumption of credibility."   8 U.S.C. § 1158(b)(1)(B)(iii).

---

[7] Challenges not argued by a party in his appellate brief, including challenges thereafter made at oral argument, are deemed abandoned and need not be addressed by this court.  *See Alom v. Whitaker*, 910 F.3d 708, 709 (2d Cir. 2018); *United States v. Ramos*, 677 F.3d at 129 n.4; *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

Moreover, an agency assessing credibility may itself properly consider the totality of the circumstances, including the candor and responsiveness of the applicant, the inherent plausibility of his account, his demeanor while testifying, and the consistency of his account, both internally and as compared with other evidence, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Id.*; *see Xiu Xia Lin v. Mukasey*, 534 F.3d at 167 (stating that for cases filed after May 11, 2005 effective date of REAL ID Act, "an IJ may rely on *any* inconsistency or omission in making an adverse credibility determination as long as the 'totality of the circumstances' establishes that an asylum applicant is not credible" (emphasis in original) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii))).

### B. The Adverse Credibility Determination Is Supported by Substantial Evidence

#### 1. Inconsistencies

Gao asserts that the agency erred in finding his testimony not to be credible because "[a]ll . . . areas" of identified inconsistency "ha[d] been explained by [him] and can be reasonably reconciled with the information in the record." Pet'r Br. at 11. He faults the IJ for "fail[ing] to accept reasonable explanation of issues in the case, and overly rel[ying] on . . . speculations." *Id.* at 14. The argument fails because, as this court has explained, a petitioner "must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Hui Pan v. Holder*, 737 F.3d 921, 930

(2d Cir. 2013) (quoting *Majidi v. Gonzales*, 430 F.3d 77, 80–81 (2d Cir. 2005) (emphasis in original)). Gao cannot make that showing here, particularly when the inconsistencies—which we are obliged to discuss individually—are considered as a whole.[8]

### a. Length of Time Gao Hosted Religious Gatherings at Home Before Arrest

Asked on direct examination if he remembered "approximately when [he] stopped attending religious activities at the church and started attending [home] gatherings," Gao replied "[a]round . . . December of 2008." Admin. R. at 64. That would have been some five months before his May 10, 2009 arrest. A few questions later, however, Gao testified that he had been conducting religious gatherings at his home "for approximately a year" prior to his arrest. *Id.* In his brief to this court, Gao concedes that "this seems like a clear contradiction because the numbers don't add up." Pet'r Br. at 11. Nevertheless, he argues that there is no contradiction if one construes the first question to ask when *both* parts of the conjunctive sentence were satisfied, *i.e.*, when Gao was both hosting religious gatherings at his home *and* no longer going to church. Gao hypothesizes that he "could've" started holding family gatherings while still attending the original church. *Id.* at 12. In other words, he "could've" hosted home gatherings for seven months while still attending church services,

---

[8] In *Borovikova v. United States Department of Justice*, 435 F.3d 151, 156–57, 159–60 (2d Cir. 2006), this court recognized that even a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully.

12

foregoing the latter to participate exclusively in the former only in December 2008. *Id.*

The argument is not compelling for several reasons. First, it is based on hypothesis, *i.e.,* explanations that Gao could have given the IJ, rather than any explanation that he in fact gave. The omission is significant because Gao himself acknowledges that the contradiction "seems . . . clear" on the face of his testimony. *Id.* at 11. Thus, the burden of explanation fell squarely on him. *See Majidi v. Gonzales*, 430 F.3d at 81. In the absence of any record explanation proffered to the IJ, we cannot conclude that the agency was compelled to reconcile the contradiction in the way here urged by Gao. *See id.* (observing that where alien failed to explain material inconsistency in facts supporting asylum claim, agency was not "compelled" to construe facts in favorable light urged to reviewing court).

Second, even if Gao had proffered his hypothesized explanation to the IJ, he can hardly show that the IJ would have been compelled to accept it. While compound questions can sometimes confuse, if the "stop" and "start" referenced in the question in fact occurred on different dates—particularly dates separated by seven months as Gao now suggests—a factfinder might reasonably have expected Gao to have said so. In any event, Gao's claim that he could have started conducting home services a year before his May 2009 arrest while continuing to attend church services through December 2008 cannot be deemed compelling because it is belied by Gao's written statement in support of relief from removal. In a section of the statement making no mention of church attendance (and thus

13

posing no risk of misunderstanding), Gao quite clearly states that he "started" to host religious gatherings in his home in December 2008, and even specifies the exact starting date: December 12, 2008. Admin. R. at 118 ("[O]n December 12, [2008], I started to organize[] several farmers, who would like to believe in God, to come to my home and stud[y the] Bible.").

On this record, we identify no error either in the agency's determination that Gao testified inconsistently as to the length of time he held religious services in his home before his May 10, 2009 arrest, or in its reliance on that inconsistency in assessing credibility.

### b. Reasons for Religious Gatherings at Home

On direct examination, Gao was asked, "Why was it that the first [religious] gathering you attended was in a church, but the gathering you were arrested at was in a home?" *Id.* at 62. Gao said there were "numbers of reasons," and proceeded to detail two: (1) "the distance of the church location" from his home, and (2) the church's focus on "the Communist party's policy," by contrast to the home gathering's focus on "just study reading the Bible." *Id.* Gao had mentioned neither of these reasons in his written statement seeking relief from removal. There, he stated a single, more ambitious reason for hosting home gatherings: to help convert "thousands" to Christianity. *Id.* at 118.

Gao argues that these statements do not manifest inconsistency because "many" motives might have informed his decision to host religious gatherings in his home rather than attend a church. Pet'r Br.

14

at 13 ("The ultimate goal might be to convert as many as he can to believe in God, but practically speaking, it is just much simpl[er] to stay at home and tailor his gatherings to his own needs."). Indeed, he stated as much in referencing "numbers of reasons." Admin. R. at 62. It is certainly plausible for multiple motives to inform human actions. But we do not think Gao's multiple-motives explanation compelled the agency to deem Gao credible. *See, e.g., Borovikova v. U.S. Dep't of Justice*, 435 F.3d 151, 158 (2d Cir. 2006) (distinguishing what is arguably persuasive from what is compelling). A factfinder could reasonably think that, at a hearing to explore an alien's professed fear of *religious* persecution, it is more than curious that the alien would first reference a non-religious motive of convenience, *i.e.*, the distance of the church from his home, while failing entirely to mention a more profound, entirely religious motive such as a large-scale conversion mission. The omission is all the more suspect because the latter motive is the only one Gao reported in his written statement for relief. In sum, Gao's multiple-motives explanation, even if plausible, would not compel the agency to excuse the identified inconsistency or to ignore it in assessing credibility.

### c. Arrest Details

On direct examination, Gao testified that in the police station interrogation that followed his arrest, four officers were present, "two in the front, two in the back." Admin. R. at 69. Gao stated that it was when he told the officers that the government afforded him "freedom of speech" that one of them slapped Gao, while the other struck him with his police baton. *Id.* In recounting the same interrogation in his

written statement, Gao mentioned only two police officers, sitting on chairs. He there stated that when he told the officers that the government allows "freedom of religion," one of the two stood up and beat Gao. *Id.* at 119. Gao argues that the IJ erred in identifying inconsistency as to the number of interrogating officers because his written statement "never stated exactly how many police officers were present"; it only stated that there were two officers seated. Pet'r Br. at 13. Gao further argues that the inconsistency between his invocation of "freedom of speech" and "freedom of religion" should not have borne on his credibility because it was an understandable "mix-up" on his part as both rights are "protected the same way." *Id.* at 13–14.[9]

At the outset, we note that Gao never offered either explanation to the IJ. To the extent the numbers discrepancy might not have been clear to Gao, we need not here decide whether responsibility for the failure of explanation rests with him or with the agency. *See supra* at 9 n.6. Even assuming the latter, we can confidently conclude that, had the IJ heard the explanation Gao now proffers, she would still have reached the same adverse credibility determination based on the totality of other inconsistencies, the negative demeanor determination, and the absence of corroboration. *See Tu Lin v. Gonzales*, 446 F.3d 395, 403 (2d Cir. 2006) (denying petition for review where, despite some erroneous findings, "adverse credibility

---

[9] The IJ did not identify inconsistency in Gao's account of the type of physical force used against him or the number of officers who administered such force.

16

determination is supported by substantial evidence" and "IJ would have reached the same conclusions without reliance on the erroneous findings").[10]

As for the invocation of rights precipitating physical abuse, Gao plainly bore the burden of explaining the clear discrepancy between his written statements and hearing testimony. *See Majidi v. Gonzales*, 430 F.3d at 81. Insofar as Gao submits that a "mix-up" between freedom of speech and freedom of religion does not implicate his credibility because both are protected equally, the agency was not compelled so to find. Whatever protections China may or may not afford freedom of speech and freedom of religion, a reasonable factfinder could think it unlikely that in an immigration proceeding whose singular purpose was to assess a claimed fear of future *religious* persecution, a credible alien, who had already stated that it was his invocation of freedom of religion that precipitated a beating, would be so "mixed up" as to testify that the right invoked was freedom of speech. In short, Gao's "mix-up" explanation would not compel the IJ to excuse the rights discrepancy in assessing Gao's credibility.

### d.     Period of Incarceration

On direct examination, Gao testified that, following his arrest, he spent "five months" in a detention facility. Admin. R. at 69. Subsequently, however, he testified that he was "released on November 11, 2009," *id.* at 71, which was six months after his arrest.

---

[10] The same conclusion obtains with respect to the IJ's mischaracterization of the arresting officers' surrounding actions, noted *supra* at 7 n.4.

On cross-examination, Gao acknowledged the inconsistency but explained that he had been sentenced to five months' incarceration, and, on release, given paperwork stating that he was detained for that period. Thus, he testified to that term of confinement even though "[t]he truth" is that he was confined for six months. *Id.* at 76. Before this court, Gao argues that the IJ should have accepted this explanation and not used the discrepancy to question his credibility. *See* Pet'r Br. at 14 ("The discrepancy is not caused by the petitioner and therefore, he should not bear the burden of those mistakes caused by the detention center."). In fact, the agency was not compelled to excuse the discrepancy in assessing credibility.

Gao's explanation effectively acknowledges that he knowingly testified falsely when his attorney asked him, "How long were you at the detention facility?" and Gao replied, "For five months." Admin. R. at 69. The question was unambiguous and Gao's answer—based on his professed November 11, 2009 release date—was false. A court assessing credibility may always consider the fact that a witness has lied under oath. *See Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) (explaining that because "petitioner's credibility is almost always crucial" in immigration context, "single instance of false testimony may . . . infect the balance of the alien's uncorroborated or unauthenticated evidence"). Even where, as here, the witness seems to have had little to gain from the lie, the court may consider the falsehood as evidence that the witness had little regard for his oath to tell the truth. *See generally id.* (reiterating *falsus in uno, falsus in omnibus* principle); 8 U.S.C. § 1158(b)(1)(B)(iii) (allowing factfinder to rely on "*any* inaccuracies or falsehoods" in statements made by alien,

18

"without regard to whether . . . falsehood goes to the heart of the applicant's claim" (emphasis added)).

Nor is a different conclusion compelled by Gao's claim that detention authorities never explained why he was held in custody for longer than his pronounced sentence. This misperceives the inconsistency relevant to Gao's credibility. It is not the discrepancy between Gao's sentence and the time he actually served. Rather, it is the discrepancy between the actual length of Gao's detention and the length of time he testified to being detained. The person responsible for that inconsistency is Gao, and the IJ was not compelled to accept his explanation for testifying falsely, much less required to excuse the falsehood in assessing Gao's credibility. *See Majidi v. Gonzales*, 430 F.3d at 80–81.

In sum, Gao's explanations—whether timely or belated—for clear inconsistencies in his testimony do not compel a factfinder to excuse the inconsistencies or to find Gao credible. Rather, the inconsistencies, particularly when considered as a whole, provided substantial evidence to support the agency's finding that Gao did not credibly establish his claims for relief from removal.

### 2. Demeanor

The agency's adverse credibility determination is further supported by the IJ's negative demeanor assessment. Specifically, the IJ found that Gao was sometimes "non-responsive" to questions, even on direct examination. Admin. R. at 36. She observed that when questions were asked that "went outside the four corners of his

19

[written] statement," Gao "had difficulty providing responses." *Id.* Such observations can raise concerns that a witness's testimony is based more on a script than on actual experience. *See Majidi v. Gonzales*, 430 F.3d at 81 n.1 (explaining IJ's "unique advantage" in assessing credibility, including discerning whether applicant's testimony amounts to attempt to recall "script" (internal quotation marks omitted)). Thus, the IJ acted well within her discretion in relying on these demeanor observations in deciding not to credit Gao's testimony. As this court has recognized, it is precisely because of the "IJ's ability to observe the witness's demeanor" that she is in the "best position to evaluate . . . credibility." *Jin Chen v. U.S. Dep't of Justice*, 426 F.3d 104, 113 (2d Cir. 2005). Moreover, because "[d]emeanor is virtually always evaluated subjectively and intuitively," we accord an IJ "great deference on this score." *Tu Lin v. Gonzales*, 446 F.3d at 400.

In sum, the IJ's unchallenged negative demeanor finding reinforces the conclusion that the agency's adverse credibility determination is supported by substantial evidence.

### 3. Corroborating Evidence

The IJ found, and the BIA agreed, that Gao's corroborative evidence did not assuage the credibility concerns arising from his inconsistent statements and evasive demeanor.[11] Gao does not

---

[11] The REAL ID Act affords factfinders considerable flexibility in requiring corroborating evidence, even for credible testimony. *See* 8 U.S.C. § 1158(b)(1)(B)(ii).

meaningfully challenge this conclusion.[12]  Nor could he successfully do so.

Insofar as Gao offered letters from his wife and from a person arrested with him on May 10, 2009, the IJ acted within her discretion in according them little weight because the declarants (particularly Gao's wife) were interested parties and neither was available for cross-examination.  *See Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) (upholding agency decision to give little weight to wife's letter, observing that court "defer[s] to the agency's determination of the weight afforded to an alien's documentary evidence").  Meanwhile, the testimony of Pastor Kwak pertained only to Gao's practice of Christianity in the United States and, thus, could not corroborate Gao's inconsistent account of past persecution in China.[13]

## III.    Conclusion

In sum, we identify no error in the denial of Gao's claims for asylum, withholding of removal, and CAT relief.  In the circumstances of this case, all three claims depended on Gao's

---

[12] In his brief, he offers only a conclusory statement that he "submitted sufficient documents" to support his claims for relief from removal.  Pet'r Br. at 14; *see Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 n.7 (2d Cir. 2005) (explaining that argument, to which petitioner devoted "single conclusory sentence," was abandoned).

[13] To the extent the IJ decided not to credit Pastor Kwak about Gao's religious practice in the United States, that conclusion finds support in statements made by the pastor in two letters inconsistently reporting the date Gao joined the New Day Church as December 15, 2013, and December 29, 2013.  *See supra* at 8.

21

credibility. The agency's adverse credibility finding was supported by substantial evidence consisting of numerous testimonial inconsistencies and Gao's evasive demeanor. Gao's argument that he satisfactorily explained the inconsistencies fails because the explanations would not compel a reasonable factfinder to excuse the inconsistencies or credit Gao's testimony.

Accordingly, we DENY the petition for review.