22-6287
Ali v. Garland

BIA
Christensen, IJ
A206 910 119

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of March, two thousand twenty-four.

PRESENT:
        **DEBRA ANN LIVINGSTON,**
           *Chief Judge,*
        **ALISON J. NATHAN,**
        **SARAH A. L. MERRIAM,**
           *Circuit Judges.*

_____

**KORBAN ALI,**
        *Petitioner,*

        **v.**                         **22-6287-ag**

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
        *Respondent.*

_____

FOR PETITIONER:        Khagendra Gharti-Chhetry, Esq., New York, NY.

FOR RESPONDENT:        Brian Boynton, Principal Deputy Assistant Attorney General; Nancy E. Friedman, Paul Fiorino, Senior Litigation Counsel, Office of

Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Korban Ali, a native and citizen of Bangladesh, seeks review of a May 23, 2022, decision of the BIA affirming a June 18, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Ali,* No. A206 910 119 (B.I.A. May 23, 2022), *aff'g* No. A206 910 119 (Immigr. Ct. N.Y.C. June 18, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions "for the sake of completeness." *Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). We review the agency's factual findings, including adverse credibility determinations, for substantial evidence, and we review questions of law and the application of law to fact *de novo*. *See Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, . . . and any inaccuracies or falsehoods in such statements without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the

2

applicant's claim, or any other relevant factor.

*Id*. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

Substantial evidence supports the agency's adverse credibility determination. As the agency found, Ali's testimony at the 2019 hearing was both internally inconsistent and inconsistent, in several respects, with his written statement and border interview.

First, he made inconsistent statements about when, where, and how many times he was attacked. During his September 2014 border interview, Ali described being attacked in April 2014, while he was putting up posters in support of his political party. *See* Certified Administrative Record ("CAR") at 552. He stated that members of the Awami League, a rival political party, "caught" him and beat him with wooden sticks. *Id.* He further asserted that "[t]he next day, they came to [his] house" and threatened him. *Id.* But in his written application and during his 2015 hearing, Ali described Awami League members threatening him on April 13, 2014, and then coming to his home and beating him in May 2014. At the 2015 hearing, Ali testified that he "was not attacked physically" any time other than the May 2014 incident, CAR at 195, but then proceeded to describe another physical attack on April 10, 2014. At his second hearing in 2019, Ali again testified that he was *threatened* on April 13, 2014, and physically attacked on May 20, 2014. He specifically testified that he was *not* attacked while putting up posters in April 2014, only

3

"after this date," when he was attacked on May 20, 2014, at his home. CAR at 257. When asked about the discrepancies between his testimony and his statements during the border interview, Ali stated that he "couldn't figure out things" and "was not very mindful" during the interview. CAR at 258.

The agency was not required to accept Ali's explanations that the interviewer hurried him and allowed him to describe only one incident, or that he did not think it was necessary to mention the April assault at his hearings, because these explanations did not resolve the inconsistency about how many times he was assaulted. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)).

Moreover, we are satisfied that there is a "sufficiently accurate record" of the border interview to merit its consideration in evaluating Ali's credibility. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir. 2004). Although there is no verbatim transcript of the interview, the interview record lists the questions posed and Ali's responses; the interview was conducted through a Bengali interpreter, Ali stated at the beginning and the end of the interview that he understood the interpreter; Ali's responses to questioning indicated his understanding; and Ali volunteered to the interviewer that he had been harmed in a manner similar to the harm he later alleged in his asylum application, and therefore did

4

not appear reluctant to reveal information to immigration officials.[1]  *See id.* at 179-80. While the interviewer did not ask about subsequent harm after Ali described an April 2014 assault, that lack of specific follow-up does not explain why Ali initially testified at his hearing that he was only beaten once in May 2014.  Indeed, the IJ found that the interviewing "officer asked respondent questions plainly designed to elicit the details of his asylum claim."  CAR at 51.  The IJ reviewed the *Ramsameachire* factors in evaluating the import of the border interview, *see* CAR at 51-52, and we find no error in that assessment.  Further, as the BIA noted, Ali "raised no specific challenge on appeal to the reliability of the border interview."  CAR at 5.  In his briefing to this Court, Ali does not assert that the IJ or the BIA failed to consider the *Ramsameachire* factors; rather, he disagrees with the conclusion reached by the agency.  We see no basis to disturb that conclusion on this record.

Second, Ali testified on direct examination that in May 2014 there were three or four attackers, but on cross-examination, he said there were fifteen to twenty.  When asked to explain the discrepancy, Ali said that it was customary in his area for others to join in when someone was being attacked, and that he had not been asked to provide details about the assault.  The agency was not required to accept that explanation because a person could reasonably be expected to mention the arrival of many more attackers in describing an assault to the IJ.  *See Majidi*, 430 F.3d at 80; *see also Hong Fei Gao*, 891 F.3d at 78-79

---

[1] The agency also relied on the fact that Ali initialed each page of the English-language interview record, but the record does not indicate whether that document was translated for him.  As a result, his initialing the document is not strongly probative of its accuracy.

("[I]n assessing the probative value of the omission of certain facts, an IJ should consider whether those facts are ones that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances.").

Third, during the border interview, Ali asserted that he had not gone to the police because the police are controlled by the opposing party.  But during his 2015 hearing, he alleged that he went to the police the day after *both* the April and May incidents at his home, but they did not do anything in response to the April report, and they refused to take the May report unless he paid them.  Then at a subsequent hearing, when asked whether he ever went to the police to make a report, he said that he went in May and denied going in April.  The agency was not required to accept Ali's explanation that he was "not very mindful" during the border interview when he denied going to the police, particularly because he volunteered an explanation for why he decided not to make a police report. CAR at 259; *see Majidi*, 430 F.3d at 80.

Fourth, Ali said during the September 2014 border interview that he had obtained his passport more than a year earlier -- before the alleged April and May attacks.  But he testified at his 2019 hearing that he went to obtain a passport only *after* the police refused to take his report about the May 2014 assault.  The agency was not required to accept his explanation that he was describing his first passport during his interview, and then a renewed passport at his hearing, because his credibility was already in question and he did not corroborate an alleged change in the law that would have required the replacement of a passport that was only about a year old.  *See Majidi*, 430 F.3d at 80.

6

Finally, Ali does not argue that the agency misevaluated his documentary evidence. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 541 n.1 (2d Cir. 2005) (issues not discussed in a petitioner's brief are considered abandoned or waived). In any event, the agency did not err in concluding that Ali's documentary evidence failed to rehabilitate his testimony. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). "We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). As the agency observed, none of the declarants were available for cross-examination, and one of them, Ali's mother, was an interested party. *See Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (deferring to IJ's decision to give "little weight" to letters from declarants who were "interested parties" and not "available for cross-examination"). A letter purportedly from a doctor who treated Ali's injuries was prepared in English and contained multiple misspellings in both its letterhead and its body. And the statement Ali submitted to corroborate his party membership was signed by the president of an organization that Ali was later unable to identify, and Ali testified that the organization was unrelated to his party. His remaining documentary evidence did not corroborate his account of his political activities or past abuse.

Given the multiple inconsistencies and the lack of reliable corroboration, substantial evidence supports the adverse credibility determination. *See Likai Gao*, 968 F.3d at 145

7

n.8 ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."); *see also Xiu Xia Lin*, 534 F.3d at 167; *Biao Yang*, 496 F.3d at 273. The adverse credibility determination is dispositive of Ali's claims for asylum, withholding of removal, and CAT relief, all of which relied on the same discredited facts. *See Hong Fei Gao*, 891 F.3d at 76; *Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006) (per curiam).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

<div style="margin-left: 40%">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>