Singh v. Bondi

BIA
McCarthy, IJ
A208 883 522

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of February, two thousand twenty-five.

PRESENT:
> RAYMOND J. LOHIER, JR.,
> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> > *Circuit Judges.*

———————————————————————

MANPREET SINGH,
> *Petitioner,*

v.                                                          **22-6581**
                                                            **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,*
> *Respondent.*

———————————————————————

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland as Respondent.

**FOR PETITIONER:** Jaspreet Singh, Esq., Law Office of Jaspreet Singh, Richmond Hill, NY.

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Jeffrey R. Leist, Senior Litigation Counsel; Kathleen Kelly Volkert, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Manpreet Singh, a native and citizen of India, seeks review of a November 28, 2022, decision of the BIA affirming a May 13, 2019, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Manpreet Singh*, No. A 208 883 522 (B.I.A. Nov. 28, 2022), *aff'g* No. A 208 883 522 (New York Immigr. Ct. May 13, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions as to credibility. *See Yun-Zui Guan v. Gonzales*, 432 F.3d 391, 394 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings, including adverse credibility

determinations, under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (citation omitted) (internal quotation marks omitted). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ." 8 U.S.C. § 1252(b)(4)(B).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . , the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id*. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). Substantial evidence supports the agency's determination that Singh was not

3

credible as to his claim that members of opposing political parties assaulted him three times and murdered his brother.

First, the agency reasonably relied on Singh's failure to mention his brother's murder during his credible fear interview. In his application and at his hearing, Singh alleged that his brother was kidnapped during his first assault, and his family found his brother dead two days later. But Singh did not mention his brother's death during his credible fear interview. The agency reasonably concluded that this omission undermined Singh's credibility because it was information that he would reasonably be expected to include, particularly as he mentioned his brother's kidnapping several times. *See Jian Liang v. Garland*, 10 F.4th 106, 115 (2d Cir. 2021) (upholding adverse credibility determination where petitioner omitted "critical information that he would reasonably have been expected to disclose much earlier").

Singh argues that he alluded to his brother's death during the interview, that the omission of additional information is attributable to the cursory nature of the interview and the interviewer's failure to ask follow-up questions, and that detained interviewees (as he was) are more likely to be poorly prepared and afraid

of government officials.[1] However, we defer to the agency when there are multiple possible interpretations of the record. *See Siewe v. Gonzales*, 480 F.3d 160, 167–68 (2d Cir. 2007). Singh repeatedly referred to his brother's kidnapping, and while the interviewer did not ask what happened to his brother thereafter, Singh failed to volunteer that information when given several openings to do so; Singh has not explained how poor preparation would account for his decision to mention only the kidnapping; and there is no reason to believe that he concealed this aspect of his claim because he was afraid of the interviewer.

Second, the IJ did not err in finding implausible Singh's account of twice being beaten to the point of prolonged unconsciousness and requiring medical treatment, but going to the police station later the same day. Singh argues that the IJ erroneously speculated that he suffered head trauma, when he could have lost consciousness for other reasons; but he confirmed at the hearing that he had two serious head injuries within a few months of each other. Given the severity of the injuries described, and the advice of bed rest recorded in his medical

---

[1] Singh does not otherwise challenge the agency's reliance on the interview record, and he does not dispute that it accurately conveys what was said. The agency may rely on such records if, as here, they bear sufficient "hallmarks of reliability." *Ming Zhang v. Holder*, 585 F.3d 715, 725 (2d Cir. 2009).

records, the IJ had a basis to conclude that it was implausible that he would travel to the police on the same day as the assaults. *See id*. at 168–69 (although the agency may not engage in "bald" speculation, we defer to an inference that is "made available . . . by record facts, or even a single fact, viewed in the light of common sense and ordinary experience"). Similarly, the IJ had reason to doubt Singh's account that he did not leave the area until after a third beating. Singh did not allege a change in his family's circumstances between the second and third beatings, nor did he explain why he and his family believed he was safe in that intervening period, given his claim that he had already been assaulted both before and after his brother's murder.

Third, the agency reasonably relied on an inconsistency as to where Singh lived in the United States. *See Xiu Xia Lin*, 534 F.3d at 167 (allowing IJ to rely on inconsistencies "collateral or ancillary to the claim" (internal quotation marks omitted) (quoting *Tu Lin v. Gonzales*, 446 F.3d 395, 402 (2d Cir. 2006))). Singh's application stated that he lived briefly in Indiana, and then in New York from 2016 to the "present" and worked odd jobs. He confirmed at his hearing that he had reviewed the content of the application in his native language and that it was correct, and his counsel confirmed there were no changes. But Singh

6

acknowledged on cross-examination that he had opened a bank account using a California address and obtained two California driver's licenses, conceding that he had to show California proof of address to obtain the licenses. Given that requirement, the agency was not required to accept Singh's explanation that he stayed in California only occasionally, in company housing between assignments, but did not reside there. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (citations omitted) (emphasis in original) (internal quotation marks omitted)). Similarly, the record is vague and inconsistent about Singh's employment: his application reported only odd jobs, and he said there were no changes at the beginning of the hearing, but he testified that he was employed as a truck driver beginning in 2018.

Fourth, the IJ's demeanor finding—that Singh's dramatic change in demeanor on cross-examination, when he lowered his head and stopped making eye contact with the people questioning him, demonstrated a lack of candor— bolsters the adverse credibility determination. "[B]ecause demeanor is virtually always evaluated subjectively and intuitively, we accord an IJ great deference on

7

this score." *Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (citation omitted) (internal quotation marks and alterations omitted); *see also Li Hua Lin v. U.S. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006) (explaining that we "give particular deference" to demeanor findings because the IJ is "in the best position to evaluate whether apparent problems in the . . . testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question" (citation omitted) (internal quotation marks omitted)).

Finally, the absence of reliable corroboration further supports the adverse credibility determination. *See Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007) ("An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."). While Singh submitted some documentary evidence, the agency did not err in affording little weight to affidavits from family and friends in India because the authors were unavailable for cross-examination and some were interested parties. *See Likai Gao*, 968 F.3d at 149 (holding that "the IJ acted within her discretion in according . . . little weight [to letters] because the declarants (particularly [petitioner]'s wife) were interested parties and neither was available for cross-

8

examination"); *Y.C.*, 741 F.3d at 332 ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence." (citing *Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 342 (2d Cir. 2006))).

In addition, Singh's brother's death certificate did not state a cause of death and thus failed to corroborate that his brother was murdered by members of an opposing party. The agency reasonably questioned the reliability of two English-language medical records, created in 2019 to corroborate treatment following beatings in 2015. Singh conceded that the dates were formatted in an American style (month-day-year) not standard in India (where dates are given day-month-year), and testified that this was because his father had requested this formatting—suggesting that the documents' preparer was taking instructions about their contents. And the IJ reasonably gave less weight to some evidence presented to support Singh's claim that he had been living in New York (an interim driver's license and tax forms) because that evidence was created immediately before his May 2019 hearing.

In sum, these findings—an omission going to the heart of Singh's claim, his inconsistent and implausible testimony, the IJ's demeanor assessment, and the absence of reliable corroboration—provide substantial evidence for the adverse

9

credibility determination.  *See Xiu Xia Lin*, 534 F.3d at 167; *see also Jian Liang*, 10 F.4th at 115; *Likai Gao*, 968 F.3d at 149; *Biao Yang*, 496 F.3d at 273; *Siewe*, 480 F.3d at 168–69.   The adverse credibility determination is dispositive of asylum, withholding of removal, and CAT relief because all three forms of relief are based on the same discredited factual predicate.  *See Hong Fei Gao*, 891 F.3d at 76.  We therefore do not reach the Government's argument that Singh's CAT claim is unexhausted.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

For the foregoing reasons, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

<div style="margin-left:40%">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>

10