Haque v. Bondi

BIA
Segal, IJ
A208 600 868

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of July, two thousand twenty-five.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD J. SULLIVAN,
> MYRNA PÉREZ,
> *Circuit Judges.*

_____

ENAMUL HAQUE,
> *Petitioner*,

v.

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

22-6393
NAC

FOR PETITIONER:                    Xiaotao Wang, Law Office of Xiaotao Wang, P.C., New York, NY.

FOR RESPONDENT:                    Brian M. Boynton, Principal Deputy Assistant Attorney General; Sabatino F. Leo, Assistant Director; Tatiana G. Pino, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Enamul Haque, a native and citizen of Bangladesh, seeks review of a decision of the BIA affirming a decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Enamul Haque*, No. A208 600 868 (B.I.A. July 22, 2022), *aff'g* No. A208 600 868 (Immigr. Ct. N.Y.C. May 30, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

"[W]e review the decision of the IJ as supplemented by the BIA," but we only consider the grounds for the IJ's decision that the BIA reached and relied on. *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review an adverse

2

credibility determination "under the substantial evidence standard," *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018), and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B).

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, [and] the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id.* § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

We conclude that substantial evidence supports the agency's adverse credibility determination here. Haque alleged past persecution and a fear of

3

future persecution from members of the Awami League (the "AL") on account of his links to the Bangladesh Nationalist Party (the "BNP"). The agency reasonably found that Haque was not credible based on inconsistencies in his descriptions of the number of AL members who attacked him in August 2014; the date when a photograph was taken of his store after it allegedly had been vandalized and burned; the month when he moved to Dhaka, Bangladesh to escape the AL; and the date on which he applied for a visa to the United States. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully.").

*First*, Haque made inconsistent statements about how many AL members were involved in the August 2014 attack at his store. His amended written declaration stated that six men from the AL came to his store demanding a donation, but he testified repeatedly that there were forty men. The agency was not required to accept his explanation that there was a mistake in his declaration because he confirmed that he had reviewed the documents with his attorney and that everything in his declaration was true, correct, and complete. *See Majidi v.*

4

*Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)). To the extent he now argues that the mistake was due to his history of trauma and the time that had passed after the incident, he did not provide this explanation to the IJ, nor do we find this explanation compelling because it does not resolve why Haque's written statement – which was prepared prior to his testimony – contained such an error. *See id*.

*Second*, Haque provided inconsistent information as to when he fled to Dhaka. His declaration and application reflected that he left for Dhaka in August 2014 shortly after the attack, but he testified before the IJ that he waited until October 2014 to go to Dhaka because he needed to have a cast removed from his wrist and he was ill when he was discharged from the hospital in August 2014. Although isolated and minor date discrepancies "need not be fatal to credibility," Haque provided specific dates in his application, and the inconsistencies here were not isolated given the other inconsistency about the August 2014 attack. *Diallo v. INS*, 232 F.3d 279, 288 (2d Cir. 2000).

5

*Third*, the agency reasonably relied on Haque's inconsistent testimony regarding a photograph of his store. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). He first testified that the photo was taken in 2014 – when the shop was rebuilt after AL members vandalized and burned it – but later testified that it was taken in 2019 after he came to the United States and the shop had been shut down. Then, when asked why the store was stocked and the doors were open in the photograph, he said that it was an earlier photo and that another photo showed a closed shop. But Haque never provided that other photo and did not explain why his testimony regarding the photo changed. *See Majidi*, 430 F.3d at 80.

*Fourth*, the agency reasonably relied on inconsistencies in Haque's testimony as to when he applied for a U.S. visa. He first testified that he applied for a visa with the embassy before 2014, then said that he applied in 2014, and later testified that he applied sometime in 2013. He also repeatedly stated that he applied for a visa before he ever had any problems with the AL. But records from the U.S. Department of State indicate that Haque applied for a visa in May or June of 2014, which was *after* the AL vandalized and burned his store. Haque did not explain this inconsistency.

6

Although Haque argues that the findings regarding the photograph and visa application do not go to the heart of his claim, the agency may consider inconsistencies in determining credibility regardless of whether they go to the heart of a petitioner's claim. *See* 8 U.S.C. § 1158(B)(1)(b)(iii). In sum, we conclude that the inconsistencies in Haque's testimony about his alleged persecution and when he fled to Dhaka, in conjunction with the confusing and inconsistent testimony regarding the photograph of his store and his U.S. visa application, provide substantial evidence for the agency's adverse credibility determination. *See id.*; *Likai Gao*, 968 F.3d at 145 n.8; *Xiu Xia Lin*, 534 F.3d at 167. That adverse credibility determination is dispositive of Haque's claims for asylum, withholding of removal, and CAT relief because all three claims are based on the same factual predicate. *See Hong Fei Gao*, 891 F.3d at 76 ("Where the same factual predicate underlies a petitioner's claims for asylum, withholding of removal, and protection under the CAT, an adverse credibility determination forecloses all three forms of relief.").

Haque nevertheless points to our decision in *Paul v. Gonzales*, 444 F.3d 148 (2d Cir. 2006), in which we observed that "an applicant may prevail on a theory of future persecution despite an IJ's adverse credibility ruling as to past persecution,

7

*so long as the factual predicate of the applicant's claim of future persecution is independent of the testimony that the IJ found not to be credible.*" *Id.* at 154. But Haque's fear of future persecution is based on the same factual predicate as his claim of past persecution – namely, that AL members targeted him, and will target him, because of his links to the BNP – and that factual predicate is dependent on the testimony that the agency found was not credible. Because the agency's adverse credibility determination is dispositive, we need not reach Haque's alternative arguments regarding a pattern or practice of persecution in Bangladesh or the possibility of relocation within his home country. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule[,] courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

8