23-6056
Roka v. Bondi

BIA
Cassin, IJ
A209 154 561

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of February, two thousand twenty-five.

PRESENT:
> REENA RAGGI,
> EUNICE C. LEE,
> MARIA ARAÚJO KAHN,
> *Circuit Judges.*

_____

HANKA ROKA,
> *Petitioner,*

> v.                                                          **23-6056**
>                                                              **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,[1]
> *Respondent.*

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela Bondi is automatically substituted for former Attorney General Merrick B. Garland as Respondent.

**FOR PETITIONER:**    Khagendra Gharti-Chhetry, Esq., New York, NY.

**FOR RESPONDENT:**    Brian Boynton, Principal Deputy Assistant Attorney General; Cindy S. Ferrier, Assistant Director; Micah Engler, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Hanka Roka, a native and citizen of Nepal, seeks review of a BIA decision affirming an Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Roka*, No. A 209 154 561 (B.I.A. Dec. 29, 2022), *aff'g* No. A 209 154 561 (Immigr. Ct. N.Y.C. May 23, 2019). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). "We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard . . . ." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator

2

would be compelled to conclude to the contrary."   8 U.S.C. § 1252(b)(4)(B).

The IJ's denial of relief turned on a finding that Roka's testimony in support of his application was not credible and lacked corroboration.

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

*Id*. § 1158(b)(1)(B)(iii).

When

> a petition for review challenges an adverse credibility finding, the alien bears a particularly heavy burden because we review such a factual determination "under the substantial evidence standard," which—absent some legal error—requires us to "defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling."

*Gao v. Barr*, 968 F.3d 137, 144 (2d Cir. 2020) (quoting *Hong Fei Gao*, 891 F.3d at 76)

(alterations in original).   That is not the case here.

Substantial evidence supports the determination that Roka was not credible in claiming that Maoists threatened and beat him for supporting the Nepali Congress Party ("NCP"). Specifically, Roka provided inconsistent descriptions of the alleged beating. The record of his credible fear interview reports that Roka said that Maoists took him two or three hours away from his house and there beat him unconscious. Roka reported reviving later that night and returning home the next morning. By contrast, in a subsequent written statement and during his hearing, he stated that the beating took place right outside his home, and in the presence of his family, who were with him when he regained consciousness a few hours later.[2] When asked to explain the discrepancy, Roka denied stating at his credible fear interview that his attackers took him away from his home, and his attorney argued that there must have been an interpretation error at the interview.[3]

The agency was not required to accept this explanation. *See Majidi v.*

---

[2] As the Government correctly points out, Roka was also inconsistent in identifying the number of assailants, but the agency did not rely on that inconsistency.

[3] Roka has abandoned a claim (made at his hearing) that he may have misunderstood the interview interpreter.

*Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)). While "adverse credibility determinations based on 'discrepancies' with a credible fear interview should be examined with care to ensure that they are not arbitrary," when "the record of a credible fear interview displays the hallmarks of reliability, it appropriately can be considered in assessing an alien's credibility." *Ming Zhang v. Holder*, 585 F.3d 715, 724–25 (2d Cir. 2009).

Such hallmarks are present here because (1) the interview "was memorialized in a typewritten document setting forth the questions put to the petitioner as well as [his] responses" (although not a verbatim transcript); (2) it was conducted through an interpreter; (3) Roka said (both during his interview and initially at his hearing) that he understood the interpreter, and his responsive answers to the interview questions reflected his understanding; (4) the interviewer read a paragraph explaining the purpose of the interview, the importance of answering questions fully and truthfully, and Roka's ability to ask for explanations; and (5) the questions were designed to elicit the basis for an asylum

5

claim. *Id.*

To the extent Roka argues that grammatical errors or non-standard English suggest that the interpreter misinterpreted Roka's statement testimony about the distance from his home at which the beating occurred, the agency was not required to reach that conclusion. *See Siewe v. Gonzales*, 480 F.3d 160, 167–68 (2d Cir. 2007) (explaining that Court defers to agency when multiple interpretations of record are possible). In arguing otherwise, Roka argues that he would have had no way to know if the interpreter misstated his response about where he was beaten as that information was not included in the summary of claim read back to him at the close of the interview. Nevertheless, Roka does not dispute telling the interviewer that he "woke up later on in the night and then next morning [he] went to [his] home," Certified Administrative Record at 176, and it was not "illogical or implausible," *Siewe*, 480 F.3d at 167 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 577 (1985)), for the agency to find that was inconsistent with his later claim that he simply meant he went inside the house the next morning. It would be odd to specify that he returned home if he was immediately outside his house the entire time—and that he would regain consciousness outside in his front yard at night, but not go inside until the morning.

Nor was this inconsistency too minor and tangential to support an adverse credibility determination, given that it concerned basic details of the only alleged incident of physical violence. "[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible," *Gao*, 968 F.3d at 145 n.8, and the agency "may, either expressly or impliedly," discredit an applicant's testimony and evidence under "the maxim *falsus in uno, falsus in omnibus* [false in one thing, false in everything]," *Siewe*, 480 F.3d at 170 (quotation marks omitted).

The absence of reliable corroboration further supports the adverse credibility determination. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The IJ did not err in granting limited weight to statements from Nepal, including statements from Roka's wife[4] and friend, because the declarants were unavailable for cross-examination and some were interested parties. *See Gao*, 968 F.3d at 149 (holding

---

[4] These statements include claims about subsequent Maoist attacks on Roka's family by Maoists, as well as the disappearance of Roka's father.

"IJ acted within her discretion in according . . . little weight [to letters] because the declarants (particularly [petitioner]'s wife) were interested parties and neither was available for cross-examination").[5]  The IJ also did not err in giving limited weight to Roka's medical record.   The document was handwritten and difficult to read; it does not purport to corroborate Roka's injuries; and its author was not available for cross-examination.  *See Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence.").   And even if Roka's NCP membership card and a letter from the NCP establish his involvement with that group, the letter recounts Roka's allegations of past persecution without specifying the basis for the declarant's knowledge of those events.

In sum, substantial evidence supports the adverse credibility determination, which is dispositive of all of Roka's claims for asylum, withholding of removal, and CAT relief because each form of relief here is based on the same factual

---

[5] As the Government points out, Roka's argument that his wife is not an interested party because they are legally separated was unexhausted before the BIA.   *See Ud Din v. Garland*, 72 F.4th 411, 419–20 & n.2 (2d Cir. 2023) (reaffirming that administrative exhaustion is "mandatory in the sense that a court must enforce the rule if a party properly raises it" (quotation marks omitted)).

predicate.[6]  *See Hong Fei Gao*, 891 F.3d at 76.

For the foregoing reasons, the petition for review is DENIED.  All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

---

[6] We therefore do not reach the BIA's conclusion that Roka waived his CAT claim, or the Government's argument that his CAT claim is unexhausted.  *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").